HUBER, Respondent, vs., STARK and another, Appellants.

*December 14, 1904—March 14, 1905.*

*Adjoining landowners: Projection of eaves over boundary line: Continuing trespass: Remedies: License: Revocation: Discharge of rainfall on land of another.*

1. An encroachment by one person into the domain of another, that other not being prejudiced in the occupancy of his land up to the boundary line between the two, as for example by such person projecting the eaves of his building over the boundary line, is remediable at the suit of such other to enjoin as a continuous trespass.
2. It is no ground for mitigation of damages caused to the property of one person by a trespass thereon that if such property had been in a good state of repair the wrongful invasion would not have damaged it.
3. If one person without consideration verbally grants the use of his land to another, regardless of whether when the permission is given the parties contemplate that the privilege will be permanent, and whether such other enters upon the land and expends money thereon to facilitate the enjoyment of such privilege, the transaction creates only a mere license revocable at the pleasure of such person.
4. "No one has a right, by an artificial structure of any kind upon his own land, to cause the water which falls and accumulates thereon in rain or snow to be discharged upon the land of an adjacent proprietor. Such an erection, if it occasions the water to flow either in the form of a current or stream, or only in drops, works a violation of the adjoining proprietor's right of property, and cannot be justified, unless a right is shown by express grant or by prescription."

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Columbia county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The facts as found by the trial court, within the issues made by the pleadings, were as follows:

Plaintiff and defendant during the time stated in the complaint, and at the time of the trial, were owners of adjoining buildings. The partition wall was partly on the premises of

each. Up to the summer of 1902 such wall extended above plaintiff's roof upwards of ten feet and above defendant's roof upwards of two feet, and the construction was such that the water from the latter's building flowed therefrom to his own ground. During such summer he constructed on the rear portion of his building, extending some twenty-five feet towards the front thereof, an addition called a rigging loft. In so doing it became necessary to take down the wall above the old roof from the front of the building back to the space covered by the new construction. He did so and extended his roof over the wall on plaintiff's side so that water deposited on the former's roof necessarily flowed onto the premises of the plaintiff. For the purpose of controlling the manner of such flow defendant attached a trough to the partition wall near the top thereof and on plaintiff's side, extending the same back to the aforesaid new construction and connecting it at that point with a pipe conductor extending along on plaintiff's side of such wall to the rear thereof and thence to the ground, thereby causing the water to flow from the former's roof in a body to the premises of the plaintiff at the foot of such pipe. Plaintiff verbally consented to that arrangement when the trough and connections were erected. In constructing the rigging loft it became essential to close up a chimney located in the partition wall, which plaintiff had a right to have permanently maintained. To that end it was mutually agreed between the parties that defendant might close up the chimney on condition of his building a new one at a place agreed upon for the joint use of the parties, which was done.

By reason of the arrangement aforesaid for conducting the water from defendant's roof to the ground, water at times flowed from his roof in such volume as to overload the trough or it flowed over the same and fell upon plaintiff's roof. Occasionally the trough filled up with ice, causing water to flow upon plaintiff's roof, and in consequence ice formed thereon.

By reason of the insufficiency of the arrangement water from defendant's roof injured plaintiff's building to a considerable extent. November 24, 1902, plaintiff notified defendant to discontinue such arrangement, to remove the trough and its connections from the wall, and to so control the flow of water from his building as to prevent the same from going on to the premises of the plaintiff. He neglected to comply with such request and thereupon this action was brought. Plaintiff was injured by reason of water flowing from defendant's roof to his in the manner aforesaid, in the sum of $50 subsequent to the 24th day of November aforesaid.

On such facts the court held that the only right which defendant had to permit the water from his building to flow on to plaintiff's premises, and to maintain a trough and its connections to carry the water to the ground in the manner stated, was a license revocable at the plaintiff's pleasure; that the notice to remove the trough and connections and to cease allowing the water to flow from defendant's building to that of the plaintiff and on to the latter's premises was a revocation of such license; that the maintenance of the trough and its connections and permitting the water to flow from defendant's roof to that of plaintiff was a continuous trespass, which plaintiff was entitled to have abated; that plaintiff was entitled to have judgment accordingly, and enjoining defendant from further maintaining the trough and its connections, and from further permitting the water to flow from his building to the premises of the plaintiff, and judgment requiring defendant to restore plaintiff's building to its former condition by removing therefrom the said trough and its connections, and for $50 damages and costs. Judgment was so rendered, from which this appeal was taken.

*Daniel H. Grady,* for the appellants.

For the respondent there was a brief by *Fowler & McNamara,* and oral argument by *C. W. Fowler.*

The following opinion was filed January 10, 1905:

Marshall, J.   Counsel's first contention is that respondent should have sued in ejectment and that, as proper objections were made and exceptions to rulings saved to present that question here, a reversal should be granted for failure to invoke the proper jurisdiction.

Whether the invasion by one of the domain of another by that one projecting the eaves of his building over the premises of such other, or by any intrusion into the latter's domain, as by projecting a foundation stone beyond the boundary, such other being in no wise disturbed in the occupancy of his own land up to such boundary, is remediable in equity to compel a discontinuance thereof, or by an action for damages as for a trespass, has been solved in the affirmative in some jurisdictions (*Aiken v. Benedict,* 39 Barb. 400; *Vrooman v. Jackson,* 6 Hun, 326; *Meyer v. Metzler,* 51 Cal. 142; *Grove v. Fort Wayne,* 45 Ind. 429), and in the negative in others ('*Sherry v. Frecking,* 4 Duer, 452; *Murphy v. Bolger,* 60 Vt. 723, 15 Atl. 365).   It seems that the conflict created in respect to the matter in the New York court at an early date is yet unsolved.   *Leprell v. Kleinschmidt,* 112 N. Y. 364, 19 N. E. 812.   Probably it is true, as said in 10 Am. & Eng. Ency. of Law (2d ed.) 531, the weight of authority is in favor of the remedy in ejectment, but this state is committed to the doctrine that if, notwithstanding the encroachment, the owner of the premises invaded really occupies up to his boundary line, the proper action to redress the interference is one for damages, or to abate the aggression as a continuing nuisance.   *McCourt v. Eckstein,* 22 Wis. 153; *Zander v. Valentine Blatz B. Co.* 95 Wis. 162, 70 N. W. 164; *Rahn v. Milwaukee E. R. & L. Co.* 103 Wis. 467, 79 N. W. 747; *Rasch v. Noth,* 99 Wis. 285, 74 N. W. 820. That, it would seem, would rule this case, if the proposition as to the precise facts were new, but it was seemingly so held in

*Rasch v. Noth, supra.* That was a case of overhanging eaves, and judgment in ejectment was reversed upon the ground that the action should have been in equity to abate a nuisance, or for damages for trespass. In *Rahn v. Milwaukee E. R. & L. Co., supra,* a similar invasion was held to satisfy the rule as to the use of equity jurisdiction to abate a continuing trespass.

Exceptions are urged to several findings of fact as contrary to the clear preponderance of the evidence. It does not seem advisable to discuss the evidence for the purpose of demonstrating the correctness of our conclusion in regard thereto. As we read the record, there is ample evidence to warrant the findings. Counsel view some of them from a radically wrong standpoint. It is said that appellant justified under an oral agreement and the court found such agreement as pleaded, and so should have decided that all interferences complained of were covered by the consideration acquired by respondent in respect to the new chimney. We are unable to find that the court decided that the agreement was made as pleaded. On the contrary, the decision is to the effect that there was no consideration passing between the parties, except as regards the chimney. The same infirmity appears in counsel's criticism of the court's assessment of damages. This inquiry is made: The court having found the agreement as alleged, "how could damages be possibly assessed for injuries naturally caused in the execution of it?" That is based on the false assumption as to the decision upholding the agreement pleaded. Again, it is said, plaintiff's roof was out of repair, else no damage would have been caused thereby from the source complained of. Manifestly, it is no ground for mitigation of damages caused to the property of one person by a trespass thereon that if such property had been in a good state of repair the wrongful invasion would not have damaged it. Some other criticisms of the findings made by the learned counsel might be referred to, which in our view furnish as

little ground for disturbing the judgment as those we have instanced.

It is insisted that the conclusion of law that appellant had no better right to erect and maintain the eave trough than a mere license is wrong, because there was something more than such a right involved, in that the privilege was granted in exchange for a consideration, possession was taken of respondent's property, so far as necessary, to enjoy such privilege, and it was expected that it would be permanent. The premise assumed, that there was a consideration given for the privilege, is untenable, as we have seen. It follows that the assignment of error based on such premise is likewise untenable.

It is further contended that, conceding the facts as to the agreement between the parties being as found by the court as respondent views such finding, the indications are that it was supposed at the time the agreement was made that the privilege granted to appellant would continue indefinitely, and changes were made in the buildings in harmony therewith, in which circumstances the privilege is more in the character of an easement than a mere license, and therefore was not revocable at the pleasure of the grantor, *Morrill v. Mackman*, 24 Mich. 279, being referred to. That case has no analogy to the one in hand. The privilege there involved was orally granted upon the promise of an annual money consideration. It was said that if the agreement had been put in writing the result would have been a tenancy, and since it was not it was good as a lease from year to year. The inference plainly is that the controlling feature in the case was the consideration agreed to be paid. True, it was suggested that the attitude of the parties was such as to indicate a mutual understanding that the privilege would be permanent, but it seems plain such feature of itself would not turn a license into an easement or a lease. We should take note in passing that in *Thoemke v. Fiedler*, 91 Wis. 386, 64 N. W. 1030, Mr. Justice Newman,

speaking for the court, in discussing the question of whether a parol license of the sort under consideration can be enforced in equity, used an expression quite similar to that above referred to and in a way that might give rise to the belief that the duration of a mere license as viewed by the parties thereto at the time of the creation thereof would, or might, control as to whether it is revocable at the pleasure of the licensor or not. This is the expression to which we refer:

"The case is entirely bare of evidence showing whether such privilege was intended to be perpetual or limited in duration."

That was a mere passing remark. Probably the effect thereof, as it might be viewed apart from the general principle which ruled the case, was not appreciated. Certainly, whether at the inception of a mere license to one to enjoy some privilege in the land of another the parties thereto assume or agree that it shall be permanent does not affect its revocability.

The true rule is that a mere verbal permission by one to use the land, to some extent, of another, no consideration being paid therefor, though that other, on the faith thereof, enters upon such land and makes valuable improvements thereon to enable him to enjoy such permission, conveys no interest in the land and no right which, as to acts done by him after his privilege shall have been revoked, can be successfully asserted, defensibly or otherwise, as against the owner of the premises. *Thoemke v. Fiedler,* 91 Wis. 386,. 64 N. W. 1030; *Fryer v. Warne,* 29 Wis. 511; *Tanner v. Volentine,* 75 Ill. 624; *French v. Owen,* 2 Wis. 250; *Clute v. Carr,* 20 Wis. 531; *Duinneen v. Rich,* 22 Wis. 550.

The further point is made that a license is a full defense to all acts done pursuant thereto. We fail to find anything in the decision of the trial court not in harmony with that principle. The acts for which the redress was sought, and granted, are those committed after the license was revoked.

The next point made is that the judgment erroneously enjoined appellant absolutely from allowing water from his roof to flow on to the building or premises of the respondent. Whether one has any right whatever to turn water accumulated on his building on to the premises of another, either in a stream or through a spout, or in drops, the modern authorities are not in harmony. This court does not appear to have heretofore spoken decisively on the question. In some jurisdictions it is held that one so turning water on to the premises of another is responsible for actionable wrongdoing only if he acts negligently to the damage of his neighbor. *Underwood v. Waldron,* 33 Mich. 239; *Barry v. Peterson,* 48 Mich. 263, 12 N. W. 181; *Hazeltine v. Edgmand,* 35 Kan. 202, 10 Pac. 544; *Armstrong v. Luco,* 102 Cal. 272, 36 Pac. 674. Elsewhere the rule is that one property owner is entitled to absolute immunity from having water cast upon his premises from the adjoining building owned by his neighbor. In those cases, while the gist of the actions for violating such right is negligence, it is held that the wrong does not consist in allowing the water accumulating on the premises of one to be cast on to the adjoining premises negligently, but in allowing it, at least with knowledge of the facts, to be so cast at all. *Martin v. Simpson,* 6 Allen, 102; *Tanner v. Volentine, supra; Fitzpatrick v. Welch,* 174 Mass. 486, 55 N. E. 178; *Shipley v. Fifty Associates,* 106 Mass. 194, 198; *Jutte v. Hughes,* 67 N. Y. 267, 272.

In the last case cited the trial court instructed the jury that "if the water did come from the defendant's yard and he did everything which was possible, under the circumstances, and practicable in the way of drainage to carry it off from the premises, he was not liable." The facts were that defendant paved his yard so that the water falling thereon, which came from the building or otherwise, flowed over such pavement on to the premises of the plaintiff. The instruction was condemned on appeal, the record showing that the circumstances

referred to were in part created by the defendant and naturally caused the water that fell on his premises to flow onto those of his neighbor, the court remarking:

"He was bound to take care of such water as fell and accumulated upon his own premises, and to prevent its causing any injury to the property of the plaintiff. It matters not that defendant did all that he reasonably could to take the water off, if he suffered it improperly to increase on his own premises, and so as to flow onto the plaintiff's premises."

In *Martin v. Simpson, supra,* Bigelow, C. J., speaking on the same subject, said:

"No one has a right, by an artificial structure of any kind upon his own land, to cause the water which falls and accumulates thereon in rain or snow to be discharged upon the land of an adjacent proprietor. Such an erection, if it occasions the water to flow, either in the form of a current or stream, or only in drops, works a violation of the adjoining proprietor's right of property, and cannot be justified, unless a right is shown by express grant or by prescription."

Such doctrine seems much more consonant with the common-law rights of property than that of the Michigan court, which seems to be to the effect that there must be, in the nature of things, a sort of neighborly exchange of privileges between the owners of adjoining buildings, permitting each, if he acts with due care, to use the premises of the other as a dumping place for the water accumulating upon his own building.

The right of eavesdrip which one may possess in the land of his neighbor is an interest in realty,—an easement, and hence does not exist in any case as a mere appurtenance. It is a property right which must be acquired like any other interest in land—the *stillicidium* as regards the fall of water in drops and *flumen* as to flow of water in a stream from a spout or gutter, as the subject is treated in the civil law. The ancient rule on the subject, which cannot well be ignored without judicially taking property of one person and conferring

Huber v. Stark, 124 Wis. 359.

it on another without compensation, is stated by Mr. Washburn thus:

"For one to construct the roof of his house in such a manner as to discharge the water falling thereon in rain, upon the land of an adjacent proprietor, is a violation of the right of such proprietor, if done without his consent, and this consent must be evidenced by express grant or prescription. . . . The mode in which this injury may be occasioned may be by extending the roof of such building beyond the line of separation between the two estates, or by so constructing it as to throw the water falling thereon, by its own impulse and direction, across the line, and thereby causing it to be discharged upon the estate of the adjacent landowner." Washburn, Easements, *390.

It is strenuously contended that a licensor cannot upon revoking the license rightly compel the licensee to restore the original condition of the premises. If counsel speak only of restoration to the extent of merely terminating the trespass caused by adversely exercising the license after its revocation, he is manifestly wrong. That is all the mandatory part of the judgment is designed to accomplish in this case. It does not require the restoration of any structure, but merely requires appellant to cease trespassing upon respondent's premises by discontinuing the eave spout and its connections and cease permitting the water to flow from his roof on the respondent's premises.

Some other suggestions are made by appellant's counsel, but they either are quite unimportant or are so fully covered by what has been said that we will forego further discussion of the case.

*By the Court.*—The judgment is affirmed.

A motion for a rehearing, and for a modification of the judgment with respect to the removal of structures and restoration of plaintiff's building, was denied March 14, 1905.

KERWIN, J., took no part.