McDougald, Appellant, vs. New Richmond Roller Mills Company, Respondent.

*April 8—May 2, 1905.*

*Trial by court: Findings: Duty of court: Judgments: Necessary parties: Practice: Mandatory statutes: Waiver: Appeal: Jurisdictional error: Estoppel: Statute of frauds: Equity: Specific performance: Injunctions: Infants.*

1. A proper administration of sec. 2863, Stats. 1898, in an action tried by the court, requires findings made by the trial judge, each issuable fact being the subject of a separate finding, without any evidentiary or mere opinion matter, and also requires a specific decision as to each minor question of law and the final conclusion as well.

2. A judgment should not be rendered till the situation is such that. persons not before the court will not be liable to be prejudiced. All such persons are necessary parties to a full determination of the litigation and should be brought in by amendment.

3. Sec. 2610, Stats. 1898, providing that "when a complete deter- mination of the controversy cannot be had without the pres- ence of other parties, or any persons not parties to the action have such interests in the subject matter of the controversy as require them to be made parties for their due protection, the. court shall order them to be brought in," impliedly prohibits. the determination of a controversy in the absence of any such person.

4. Sec. 2654, Stats. 1898, which provides that a failure by a party to object by a proper pleading as to any defect in the pleading of the opposite party other than failure to show jurisdiction of the court or facts sufficient to constitute a cause of action shall be deemed waived, does not apply to a defect as regards fail- ure to bring in the necessary parties. As to that the manda- tory part of sec. 2610 must be considered as in the nature of an exception or proviso to sec. 2654.

5. Failure to make the proper order under sec. 2610, upon a defect as regards necessary parties, being apparent, is jurisdictional error in that it is a disregard of the proper manner of exercising. judicial authority.

6. The fact that a person not made a party to the litigation will not be bound by the result is not a certain test of whether he is or is not a necessary party. If the complete determination of a. controversy as to a person not before the court requires the: determination, to some extent at least, of the rights of another who is absent, such other is to be regarded as a necessary party.

7. Error in failing to bring in necessary parties to an action can be· raised at any time while the court has jurisdiction to correct it, the same as any other jurisdictional error, using the term in its general sense.

8. If a person, for a valuable consideration paid or agreed to be paid to him by another, verbally promises that other the use of his land for enjoyment in such a way as to indicate that the same is to be permanent, and such other relying thereon enters upon such use, spends large sums of money in that regard and so changes his position that if the privilege were revoked he would suffer irreparable loss, equity jurisdiction may be in- voked to prevent the use by such person of the statute of frauds to perpetrate a fraud by such a revocation and insistence, to effect, upon his legal rights. Equity can compel specific per- formance of such promise, it can enjoin interference with the

enjoyment of the privilege by legal remedies or otherwise and refuse any equitable relief to such person so long as such other himself does equity.

9. In order that a person may have a standing in a court of equity to claim rights against another on the grounds of *estóppel in pais*, such person must show that he changed his position, reasonably relying upon the conduct of such person, so that if the latter were effectively allowed to change his attitude in respect to the matter, such person would be thereby prejudiced.

10. Within the rule stated, one cannot be held to have reasonably relied upon assurance by another of authority from a minor to bind him as regards a sale of his real estate, nor rely upon mere verbal assurance of such authority as to one not a minor where opportunity to know the truth of the matter is open and there is no reasonable ground for not dealing with the owner himself.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Modified and affirmed.*

Action to abate a dam. The issues raised by the complaint, answer, and reply sufficiently appear from this abridgment of the findings:

1. Since September 16, 1898, plaintiff, then aged fifty years, has been in possession as tenant by curtesy of the land described in the complaint, and the title thereof subject thereto has been in his son Amos, then aged eighteen years, and his daughter, Helena, then aged thirteen years.

2. The northerly boundary of the land is Apple river, a navigable stream.

3. Defendant owns two flouring mills near the city of New Richmond, one being on the Willow river, which ordinarily affords about one fifth enough power to operate it, and the other situated about one half a mile north thereof, and not operated by the power of such river. The mills are some five miles from the dam in question and require about 250 horsepower.

4. One S. W. Campbell was authorized by ch. 135, Laws of 1887, to construct and maintain a dam across said Apple

river at a place chosen by him on the northwest quarter of the northeast quarter of sec. 11, town 31, range 18 west, which with some adjacent land he owned.

5. Before September, 1901, defendant with a view of using such franchise obtained an option to do so and buy the Campbell lands, and also options for flowage rights on other lands, and made investigations and ran levels above the said Campbell lands as far as Star Prairie to determine the probable line of flowage.

6. Defendant contemplated building a dam so as to raise the water of Apple river to the tail water at the Bixby mill power above, necessarily overflowing considerable territory, including a portion of the land described in the complaint, and looking to the probabilities in that regard, during the latter part of 1901 and the first part of 1902, through its duly authorized agent, it interviewed the owners of such lands in respect to the compensation that would be demanded for the right to use the same so far as so affected. One of such owners was the plaintiff. On February 12, 1902, after being informed of the facts, he assured defendant that the compensation in his case and that of his children would not exceed $500, and it was mutually agreed that when the exact extent of the flowage should be ascertained the amount to be paid should be agreed upon, if possible, otherwise should be determined by arbitration, no suggestion being made at that or any other time by the person representing defendant that said right could, or would, be obtained otherwise.

7. On the date last mentioned defendant definitely determined to build the dam and thereafter, prior to July, 1903, pursuant thereto, it expended for real estate, the Campbell franchise, material, machinery, and labor about $27,776, no precaution being taken to acquire the flowage rights as to the lands in question because of the aforesaid agreement in respect thereto.

8. Plaintiff had knowledge of defendant's operations, but

gave no intimation to it as to his attitude in respect thereto having changed, nor gave such intimation at any time prior to the commencement of this action, except as to the amount required as compensation for the right to flood the land. July 22, 1903, he protested in writing against the construction of the dam, accompanying the same with an offer to settle in full for $1,100.

9. Plaintiff at all times claimed authority to settle for the permanent right to flood such land as desired. At no time did defendant's representatives claim it could acquire such right, except by private contract, nor did plaintiff act upon the supposition that it could be otherwise acquired.

10. Preparations on the ground for improving the water-power commenced in the winter of 1902 and 1903. A canal, an essential part of the improvement, was constructed prior to July 1, 1903. Work upon the dam proper commenced early in June of that year, and the same was completed after the commencement of this action.

11. The dam is not on the land described in the Campbell act, but is on adjacent land.

12. The dam at the crest raises the ordinary level of the water eleven and one half feet, and that may be increased to sixteen and one half feet with splash-boards. The height of the water will vary with the season, six to twelve inches. Facilities have been provided to convert the water-power into electrical energy and transmit the same for use at the mills aforesaid, the amount thereof that can be counted on at the delivery point being about 400 horse-power.

13. Before commencing the dam, defendant caused the probable limit of flowage of the land in question, and others, to be plainly marked by stakes, which, as to plaintiff's land, was known to him and substantially corresponded with the understanding when the agreement aforesaid was made. The limits will not be exceeded by a sixteen and one half foot head at the dam.

14. Before this action was commenced the level of the water in the river was raised at such land about one foot. The staked line aforesaid has not been passed at any time. The damage up to the time of the commencement of this action was nominal, and up to the time of the trial $20.

15. The area of said land between the line staked out as aforesaid and the river is four acres. The backwater will affect a brook from which plaintiff and his family have been accustomed to obtain water for domestic purposes so that they will have to go about fifty feet further for an equivalent supply.

16. Three hundred dollars will measure the damage to the land by the permanent maintenance of the dam.

17. The staked out line on said land is 9.64 feet below a bench mark established by J. A. Andrews in July, 1903, on the northwest quarter of the northwest quarter of sec. 12, town 31, range 18 west, which is the upper edge of the spike in the north side of a burr oak tree seven inches in diameter twelve feet three inches east from the east side of R. J. Fleming's residence, and from which bench mark is a second such mark established by said Andrews on the same day, situated 2.357 feet higher than the first, the second one being the spike in the east side of an elm tree sixteen inches in diameter twenty-three feet nine inches from the southwest corner of said premises.

18. Between February 12, 1902, and the commencement of this action defendant repeatedly tried to settle with plaintiff for the flowage privilege in question, offering to pay from $150 to $500, the latter offer being made before such commencement, accompanied by a tender of arbitration as to the proper amount.

On such facts the court decided this: Defendant has no legal right to flow the lands in question by maintaining its dam, but plaintiff is estopped from any advantage thereof upon condition precedent that within thirty days after the

McDougald v. New Richmond R. M. Co. 125 Wis. 121.

filing of the findings the defendant deposit with the clerk of the circuit court for the plaintiff and his children $300, as compensation for the permanent use of their lands, by the maintenance of said dam, up to the line staked out as afore-said. In case of such deposit being made the complaint may be dismissed with costs against plaintiff. Neither party will be entitled to obtain any portion thereof, except upon deposit-ing with the clerk a proper conveyance to defendant of his or her interest in the land, so far as the same may be affected by the maintenance of the dam so as to raise the backwater up to the line aforesaid. The defendant, in case of failure by plaintiff or either of his children to deposit a proper convey-ance as indicated within six months from the making of the deposit, will be entitled to withdraw the money or any share thereof, unless the court in its discretion should extend the time for such withdrawal. The plaintiff, in case of failure of defendant to make such deposit, will be entitled to the relief as prayed for in the complaint. Such proceedings were there-after taken that judgment was rendered in favor of the de-fendant, and plaintiff appealed.

For the appellant there was a brief by *James A. Frear*, at-torney, and *John W. Bashford*, of counsel, and oral argument by *Mr. Frear*.

*W. F. McNally*, for the respondent.

MARSHALL, J. The character of the findings justifies call-ing attention to what was said in *Farmer v. St. Croix Power Co.* 117 Wis. 76, 93 N. W. 830, respecting the manner in which sec. 2863, Stats. 1898, should be administered. The opportunity at the circuit to become distinguished in respect to such execution is quite inviting and in some instances quite broad. In the case cited it was supposed enough was said to render the statutory duty clear. Attention was specifically called to the language requiring findings of fact and conclu-sions of law to be made by the judge, covering singly the

McDougald v. New Richmond R. M. Co. 125 Wis. 121.

issues of fact raised by the pleading, the minor conclusions of law and the final result, entirely free from extraneous matters. Here, we observe a very wide departure from such requirement. The facts found might well have been stated within fifteen folios, yet they are so involved in evidentiary and opinion matters that we are compelled to search through some sixty folios to discover them. That is all wrong. Such a method weakens a decision, entails unnecessary labor on all who have to deal therewith upon appeal, tends to render the vindication of the real right of the matter uncertain, and is a plain violation of the statute. It is hoped that the statutory requirements will be carefully followed where heretofore they have not been. If a trial judge sees fit to state reasons for his conclusion in the form of an opinion he may properly do so in a separate instrument. Such opinions are often very helpful here.

We are unable to discover any warrant for the judgment so far as it deals with the rights of plaintiff's children. They were not parties to the action. If the situation was one warranting respondent in constructing the dam without providing for the interest in the land of such children, relying on the assurance of appellant that he was authorized to represent them and that whatever agreement he made in their behalf would be carried out, appellant might well be estopped from recovering as to his own rights, except upon condition of making good such assurance. In such circumstances as a basis for the judgment the damages to the whole interest in the land caused by the construction and maintenance of the dam would be a necessary factor.

True, the son, Amos, and the daughter, Helena, are not bound by the judgment, yet their interests are so far affected thereby as to appellant, that it seems the court should not have dealt therewith at all without the owners being before the court. It was impossible, with the view taken of the case, to adjudicate appellant's rights without also adjudicating, to-

McDougald v. New Richmond R. M. Co. 125 Wis. 121.

some extent at least, those of his children. Therefore they should have been parties to the litigation for their due protection, regardless of the fact that they could not really be bound by the judgment.

Except as to appellant's interest in the land, the point made that the court erred in rendering judgment on the counterclaim must be sustained. The peremptory language of sec. 2610 applies, "when a complete determination of the controversy cannot be had without the presence of other parties, or any persons not parties to the action have such interests in the subject matter of the controversy as to require them to be made parties for their due protection, the court shall order them to be brought in." In a plain case such as this the court should not only order the necessary parties brought in, but should refuse to proceed in their absence, and if the party whose duty it is to move in the matter neglects to do so, such action should be taken as seems best for the protection of the rights of the adverse party. The statute merely incorporated into the written law a well known equitable rule. Its scope has not been definitely outlined by decisions in this court, but it has been elsewhere under Code systems similar to ours. *Osterhoudt v. Ulster Co.* 98 N. Y. 239; *Mahr v. Norwich U. F. Ins. Soc.* 127 N. Y. 452, 28 N. E. 391; *Steinbach v. Prudential Ins. Co.* 172 N. Y. 471, 65 N. E. 281; 15 Ency. of Pl. & Pr. 688, 689. A motion to bring in the necessary parties to an action does not fall within the field of sec. 2654, Stats. 1898, which provides in effect that failure to object by a proper pleading as to any defect other than want of jurisdiction or want of facts sufficient to constitute a cause of action is to be deemed waived, does not apply to want of necessary parties. As was said in effect in *Osterhoudt v. Ulster Co., supra,* as to similar provisions in New York, the mandatory part of sec. 2610 must be so construed with sec. 2654 as to render the former a proviso to the latter.

The court is not bound to wait for an objection that neces-

sary parties are not before the court before acting in that regard. It may do so upon its own motion and may entertain an objection in regard to the matter at any time while jurisdiction to hear the case remains. In *Mahr v. Norwich U. F. Ins. Soc., supra,* it is said:

"While the statute does not in terms prohibit the court from determining the controversy, unless all the necessary parties are brought in, that is impliedly commanded."

In *Steinbach v. Prudential Ins. Co., supra,* it was said, quoting from a former case, "when persons who are necessary parties are not joined, the court will not proceed until they are brought in. . . . Under the Code the court is bound to take the objection when a proper case is presented." It was there suggested, as it might be here, that it was not necessary to bring in the alleged necessary parties for their due protection, since they could not be bound by the judgment in an action to which they were not parties. To that the court answered, "a complete determination of the controversy cannot be had where there are persons, not parties, whose rights must be determined, in form at least, at the same time that the rights of the parties to the action are determined. The court cannot know how great the risk may be and hence should not permit it, even if it thinks it is remote."

The general effect of the decisions is that where there is a defect as to necessary parties to the litigation, for the court to proceed is to violate a statutory command—to commit jurisdictional error in the sense of inexcusably departing from established principles respecting the exercise of judicial power, error of the sort which, while it does not render the judgment void, as in case of want of power, renders it erroneous upon grounds which may be raised at any time while the court by due process of law has control of the cause. *Harrigan v. Gilchrist,* 121 Wis. 127, 224, 227, 238, 99 N. W. 909.

Considerable space is given in the briefs of counsel to the

question of whether the findings are sustained by the evidence. We shall rest the case upon that branch by saying we are unable to discover any warrant for holding any of the findings against the clear preponderance of the evidence. Therefore, upon familiar principles they must stand as verities.

The facts found upon which the conclusion of law is based that plaintiff is estopped from prosecuting this action upon condition of respondent doing equity by paying into court the full amount of damages that have accrued, or will accrue, to the land in question by the construction and maintenance of the dam, as regards appellant, are fully sufficient therefor within the principle of *Cobb v. Smith,* 23 Wis. 261; *Cobb v. Smith,* 38 Wis. 1; *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 48, 56 N. W. 367, and numerous other authorities that might be referred to. The doctrine thereof rests on the familiar rule that he who fails to speak when he ought to do so the court will not hear when he does speak. In *Cobb v. Smith, supra,* it was held that where a person for a valuable consideration paid, or agreed to be paid, to him by another agrees to permit such other to use his land in such a way that the termination of the privilege would cause great and irreparable damage to such other because of his having changed his position, in reliance upon such privilege being permanent, equity jurisdiction will not restrain such other from continuing to enjoy such privilege if he submits to such equitable conditions in that regard as the court shall deem just. Here, the facts found as to appellant's interest clearly satisfy that rule. Before respondent commenced the construction of the dam a verbal agreement was made with appellant whereby the former was assured of a permanent right to flow the land in question so far as the same might be affected by the backwater created by the dam, upon condition of paying the amount of damages caused thereby. Appellant knew of the proceedings to erect the dam and lay out large sums of money in connection with the improvement in reliance upon such assurance.

His attitude was that of consent to the improvement from the beginning, subject to being paid adequate damages to the land caused thereby, until the sum of $27,000 had been expended, and until successful insistence upon his legal rights would cause great hardship and irreparable mischief to respondent. In that situation, so long as respondent stood ready to make good to appellant all damage which the maintenance of the dam might cause to him, he had no standing in a court of equity to secure condemnation of the dam as a nuisance and its abatement. Something more than a mere license was involved. The case is unlike *Huber v. Stark,* 124 Wis. 359, 102 N. W. 12. Appellant agreed that in case of respondent making the contemplated improvement he might use the land in question so far as necessary therefor upon condition of paying the diminished value thereof caused by such improvement. True, the agreement was within the statute of frauds, but proceeding with the improvement till there was no opportunity for respondent to stop without suffering irreparable loss took the matter so far out of the statute of frauds as to permit equity jurisdiction to deal therewith to prevent the statute being used as a means of perpetrating a fraud. An action for specific performance might have been maintained by respondent upon well-settled principles. *McWhinne v. Martin,* 77 Wis. 182, 46 N. W. 118, and cases there referred to; *Wall v. M., St. P. & S. S. M. R. Co., supra.* In the last case cited there was a partly written and partly verbal contract to convey to the railway company the right of way for its main track. Possession of the right of way was taken and a large expenditure of money made in reliance upon such contract. The court granted specific performance.

One of the prime essentials to using equity jurisdiction to estop one because of his conduct from insisting upon his legal rights as to another, is a change of position by such other, reasonably relying upon such conduct so that he would be prejudiced if a change of attitude upon the part of that one were

given effect. We are unable to see such reasonable reliance in this case. Appellant's daughter was a minor. Certainly respondent must have known she was incapable of authorizing any one to bind her in respect to the land. The son was a little over age. He was competent to contract. If he in effect authorized appellant to act for him in the negotiations with respondent and knew, or had reasonable ground to know, of the agreement on the faith of which the erection of the dam and the making of the improvements progressed up to a short time before the commencement of this action and yet remained silent, he probably would be estopped from insisting upon his legal rights so long as respondent was willing to do full equity by him. But that is not before the court. Since there was the fullest opportunity to deal directly with him it does not seem that respondent was so far justified in neglecting to do so and relying solely upon the assumption of authority by appellant to represent him, as to preclude appellant from having compensation for the damages caused to his interest in the land, except upon condition of a release of those caused to the son's interest being placed at the disposal of respondent. Whether the judgment was intended to make appellant's recovery subject to such condition is not clear. It is ambiguous, but we need not determine what it really means since the disposition that must be made of the case will leave the interest of Amos and Helena entirely out of view.

The general result is that so far as it affects plaintiff's interest in the land the judgment is right, but so far as it deals directly or indirectly with any other interest therein it is wrong. The court should have determined the damages thereto as to appellant and dismissed the action upon condition of the same being paid into court for the benefit of appellant.

No new trial is necessary in order to protect the rights of all persons as here set forth. Upon the basis of damages found by the court as to the whole title to the land, the amount of

appellant's damage should be fixed at $171.50. The judgment must be modified so far as it deals in any way with the rights of Amos and Helena, and fails to adjudge specifically the past and prospective damage to plaintiff's interest in the land and fails to so provide that the compensation to him will be without regard to any other interest.

*By the Court.*—The judgment appealed from is modified by fixing the damage to plaintiff's interest in the land at $171.50, striking out all reference to the interests of Amos and Helena Julia and all condition as to appellant's right to the compensation awarded him, except that of filing with the clerk of the circuit court a conveyance of the permanent right to use the land, as to his interest therein, mentioned in the judgment, and is affirmed as modified,—full costs in this court to go in favor of appellant. Either party may, if that be desired, re-enter the judgment in the court below redrawn so as to eliminate therefrom all portions stricken out as aforesaid.