BLUMER and wife, Respondents, v. WISCONSIN RIVER POWER COMPANY, Appellant.

*December 4, 1958—January 2, 1959.*

142

For the appellant there was a brief by *Brazeau & Brazeau*, and oral argument by *Theo. W. Brazeau* and by *John A. Cole*, all of Wisconsin Rapids.

For the respondents there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Tomah, and oral argument by *Victor H. Breitenfield*.

FAIRCHILD, J.   Two questions are involved: (1) Does the evidence support the jury finding that the water table of plaintiffs' land has been raised by defendant's dam and pool? (2) Are plaintiffs entitled to an increase to $8,000 in the amount awarded?

(1) *The evidence tending to show that the water table has been raised.* Lay witnesses familiar with conditions on the property testified that they observed water on plaintiffs' land at higher levels after the dam than before. The pictures tended to show a few instances in which water was evident on the land on occasions after the dam in areas where there was little or no water on particular occasions before the dam.

Plaintiffs' expert gave the opinion that the dam had raised the water table and explained how the raising of the surface

of a body of water may impede drainage and raise the water table in near-by land above the elevation of the surface of the body of water. Defendant's expert did not clearly assert any opinion that the dam had not raised the water table on plaintiffs' land, although he did ascribe some of the wet condition to the existence of beaver dams in one of the sloughs and suggested that plaintiffs' land was affected by variations of the water level at Necedah rather than at the Castle Rock pool. He conceded, however, the possibility that the maintenance of defendant's pool at elevation 94 would affect near-by land up to elevation 96.

Plaintiffs' expert compared the level of the water on two occasions: One at the time that the ice was formed and one on the day he was on the land. He reasoned from those observations that, although the level at Necedah was almost the same on both occasions, the water was 15 to 21 inches higher at Blumer's on the occasion when the water in the pool was some three to four feet higher and, therefore, a rise in the pool raised the water on plaintiffs' land. Defendant's expert took readings on four dates and reasoned from them that the water was higher at Blumer's. (98 to 99) on the three occasions when the water was higher at Necedah (105 to 106) even though on one of those occasions the pool was lower (89 to 90); and that the water was somewhat lower at Blumer's (95) on the one occasion when the water was lower at Necedah (101) even though the pool at that time was at one of its higher levels (93). Andrae's line of reasoning was based on four observations instead of two, but four observations would be insufficient to establish his theory conclusively.

The trial court concluded that the lay testimony of the presence of more water after the dam was built together with the expert testimony that the operation of the dam could retard the drainage and affect the water table was a sufficient basis for the jury finding. We agree.

This court has held in two situations that testimony of laymen that they observed land before and after the building of a dike or dam and that it was wetter afterward than it had been before is sufficient to sustain a jury finding that the change was caused by the structure. *Krcmar v. Wisconsin River Power Co.* (1955), 270 Wis. 640, 72 N. W. (2d) 328, and *Konrad v. State* (1958), 4 Wis. (2d) 532, 91 N. W. (2d) 203. Of course, such testimony must be, as it was in those decisions, considered in the light of all the other circumstances shown. In the case before us, the lay witnesses had been familiar with conditions on the property for many years, the conclusion that the change observed was caused by the dam was supported by the opinion of one engineer, and the defendant's engineer conceded in effect that this conclusion was not contrary to the laws of nature. We are of the opinion that there was an issue for the jury to decide.

(2) *Damages.* The jury was asked to determine the value of plaintiffs' land before and after the dam was built. The difference between those values would be the amount of damages caused. Neither answer was sustained by the evidence. The lowest valuation given by any witness was from $16,000 to $17,000 and both valuations fixed by the jury are below that figure.

While defendant moved for a new trial in circuit court, in this court defendant's counsel confined his attack to the sufficiency of the evidence to sustain the finding that the water table was raised by defendant. He appears to be satisfied with the award of $2,800, if there was sufficient evidence that the defendant caused any damage. We understand that he concedes that the judgment is to be affirmed if we decide against defendant on the main issue.

Plaintiffs did not move for a new trial and they asked the circuit court to reconsider the matter after the circuit court granted a new trial on all issues because the findings of

value could not be sustained. Plaintiffs' position before the circuit court and here is that the jury was required by the evidence to value the land before the dam as at least $28,000, the lowest value stated by any witness, and after the dam as no more than $20,000, the highest value stated by any witness, except plaintiffs. Plaintiffs assert a right to changes in both answers and judgment for the $8,000 difference.

We agree that the evidence does not support either valuation fixed by the jury because both are lower than the lowest figure given by any witness. But we are of the opinion that the only remedy plaintiffs could claim is a new trial, and that under the circumstances of this case, a new trial must necessarily embrace all issues as originally concluded by the circuit court. Plaintiffs do not want that remedy. They did not ask for it and asked for reconsideration when the circuit court ordered it.

Plaintiffs' theory is that once the jury was satisfied that the defendant caused any change in the water table of plaintiffs' land, the jury must disregard all evidence as to the extent of the change and its effect upon value, except the figures stated by the witnesses. We are not certain that plaintiffs have properly selected the $20,000 and $28,000 figures even under their own theory, but will assume for the purpose of discussion that they have. The fallacy is that the testimony of each witness as to the difference in value before and after the construction of the dam was necessarily based on assumptions that each of the changes which he observed was caused by the defendant. It was for the jury to decide whether any one or more of the changes in conditions actually occurred and, if so, were the result of the defendant's acts. We think the jury could properly have fixed a value either before or after the construction of the dam somewhere within the range testified to by the witnesses and have fixed the other value after considering the extent of the change in water table, its effect upon the timber, whether there was greater

odor, more mosquitoes, less opportunity for pasturing animals, and the like. The circuit court instructed the jury that in answering as to value, "You should consider the value of the plaintiffs' lands as a whole, you should consider the effect of the defendant's dam, if any you so find, on the plaintiffs' timber, on the residence located on the property; on the water table underlying the plaintiffs' land and the agricultural land of the plaintiffs, any annoyance, discomfort, or inconvenience if you find that the same is existent and further find that it was caused to the plaintiffs by the dam of the defendant."

We conclude that if the jury had found, for example, a value after the dam was built of $19,000 (a figure within the range of the testimony) and a value before of $21,800, those findings would be sustained by the evidence and would sustain a judgment of $2,800. The value of $21,800 would have meant that the jury found that the extent of the rise in the water table caused by defendant and its effect upon the timber and other elements of the property, was less than that assumed by plaintiffs' witnesses. Had all parties been bound by the testimony that the difference in value attributable to the dam was at least $8,000, the jury would not have been free to answer that the dam did not raise the water table because such an answer would have meant that there was no change in value as a result of the dam.

Thus the plaintiffs are incorrect in their contention on appeal that they have a right to valuations which are at least $8,000 apart. Defendant being satisfied with the damage figure and plaintiffs having opposed a new trial, we affirm even though neither valuation figure fixed by the jury is sustained by the evidence.

*By the Court.*—Judgment affirmed.