MCLOONE METAL GRAPHICS, INC., Appellant, V. ROBERS
DREDGE, INC., Respondent.*`

*No. 368. Argued May 1, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 616.)

* Motion for rehearing denied, with costs, on September 10,
1973.

706

For the appellant there were briefs by *Moen, Sheehan & Meyer* and *Leon E. Sheehan,* all of La Crosse, and oral argument by *Leon E. Sheehan.*

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette, S. C.,* and *Robert D. Johns,* all of La Crosse, and oral argument by *Robert D. Johns.*

ROBERT W. HANSEN, J.   Five separate and distinct issues are raised on this appeal.

(1) Is a dredger liable to an adjoining property owner in the absence of negligence?

(2) Was the dredger here negligent as a matter of law?

(3) Did the trial court err in its instructions as to foreseeability of harm?

(4) Did the trial court err in excluding testimony as to foreseeability of harm?

(5) Are expert witness fees limited to $25 for each witness?

(1) *Liability without negligence?*

Appellant does not contend that the jury finding of no negligence on the part of the dredger was unsupported by the evidence. Rather it contends that the dredger, even in the absence of a showing of negligence, is liable, under a theory of strict liability, as an insurer against damage caused by the dredging to the property or building of an adjoining property owner.

Appellant's brief points out that: "There are relatively few cases involving the liability of a dredger and none in point in Wisconsin." Appellant cites cases relating to the raising of water tables by the owner of a dam [1] and argues, "The suggestion in some of these cases . . . is that the raising of the water table on Plaintiff's land is a form of trespass for which there is liability without negligence. . . ." But these cases involve the liability of the owner of the dam, not the company that built the dam. The liability of the landowner is not before us, the case against the owner of the land being filled having been, by stipulation, dismissed. Appellant relies upon a Wisconsin case in which liability was imposed on a property owner who had the rain gutter downspout on his house fixed in such a manner as to cause damage to his neighbor's house.[2] However, the liability was not placed

[1] *Blumer v. Wisconsin River Power Co.* (1959), 6 Wis. 2d 138, 94 N. W. 2d 149; *Konrad v. State* (1958), 4 Wis. 2d 532, 91 N. W. 2d 203; *Benka v. Consolidated Water Power Co.* (1929), 198 Wis. 472, 224 N. W. 718. *See also: Wausaukee v. Lauerman* (1942), 240 Wis. 320, 3 N. W. 2d 362.

[2] *Mueller Real Estate & Investment Co. v. Cohen* (1914), 158 Wis. 461, 149 N. W. 154.

on the company that installed the rain gutter. In another case cited, also involving adjoining property owners, the building owner from whose eaves water ran off onto another's property was held liable,[3] but the liability of the contractor installing the eaves was not before the court. Both Wisconsin cases holding that there is no difference between direct discharge and percolation or permeation of the soil involved adjoining landowners,[4] and in the later case the complaint, held not demurrable, was for negligence, not strict liability.[5]

We deal here with the liability of a construction firm, hired to perform a landfilling operation. The only Wisconsin case dealing with a similar situation, and not entirely so, involved the depositing of fill on top of a swamp in connection with the building of a road.[6] The county doing the landfilling and roadbuilding was sued for negligence in using ". . . the 'blanketing' method of depositing fill on top of the swamp surface when it knew such method of construction would create lateral pressure in the marsh which would damage the tower . . . ."[7] As to the landfilling and road constructing, this court stated: "Constructing the road by the defendant was not an extrahazardous activity so as to place absolute liability upon the defendant. . . ."[8]

While courts appear to be divided on the issue,[9] we conclude the better rule to be that: "An independent con-

---

[3] *Huber v. Stark* (1905), 124 Wis. 359, 102 N. W. 12.

[4] *Schuster v. Albrecht* (1898), 98 Wis. 241, 73 N. W. 990; *Eickstedt v. Seifert* (1956), 273 Wis. 122, 76 N. W. 2d 582.

[5] *Eickstedt v. Seifert, supra,* at page 129.

[6] *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. 2d 39, 117 N. W. 2d 597.

[7] *Id.* at page 42.

[8] *Id.* at page 42.

[9] *See:* Annot. (1925), 38 A. L. R. 1244, *Injury by percolation or seepage from ponded water,* stating, "The courts do not appear to be in accord on the question of one's liability for damage caused by percolation or seepage from ponded water on his premises.

tractor is liable for injuries caused by his own negligence or that of his servants in the course of his performance of the work, or his liability may be stated to be for his breach of the standard of due, ordinary, or reasonable care . . . . Conversely, a contractor is not liable for an injury . . . where he was in no way negligent in doing the work . . . ." [10] We do not find the landfilling operation here involved to fall within the extraordinary risk situations to which the doctrine of strict liability is customarily restricted. [11]

*(2) Negligent as matter of law?*

While no authorities for so doing are cited, appellant argues that the defendant ". . . should be held negligent either as a matter of law, or on the basis of res ipsa loquitur, under the specific facts presented. . . ." In the above-cited action involving landfilling and roadbuilding, [12] this court stated: "The method used by the defendant was in conformity with the customary method used by the counties of its size in building the contemplated road over the marsh and would exclude an inference of negligence." [13] Where, as in the case before us, the method used by the dredging company in doing the landfill was in conformity with the customary method used, we see no basis for holding the defendant negligent as a matter of law. As to the continuation of landfilling,

One line of decisions holds him to be an insurer. . . . Another line of decisions holds him liable only when a lack of due care is shown on his part."

[10] 65 C. J. S., *Negligence,* pp. 1053, 1054, 1057, 1058, sec. 95.

[11] *See:* Prosser, *Law of Torts* (hornbook series, 4th ed.), ch. 13, p. 518, sec. 79, stating: ". . . In general, strict liability has been confined to consequences which lie within the extraordinary risk whose existence calls for such special responsibility."

[12] *Wisconsin Power & Light Co. v. Columbia County, supra.*

[13] *Id.* at page 44, citing *Bandekow v. Chicago, B. & Q. R. Co.* (1908), 136 Wis. 341, 117 N. W. 812.

after notice of damage to plaintiff's building, with the defendant assuming that since the operation had moved away from plaintiff's building and the marsh, additional damage was unlikely, we see this as a question for a jury. Here the jury answered in the negative the question as to whether harm to plaintiff's building would then have been reasonably foreseen as probable by a person of ordinary prudence under the circumstances.[14]

(3) *Did the trial court err in its instructions as to foreseeability of harm?*

The objection of appellant is to the trial court including in its instruction on reasonable anticipation of harm to another this sentence: "Harm to another must be reasonably foreseen as probable by a person of ordinary prudence under like circumstances." Appellant contends that the word "should" should have been used instead of the word "must." The sentence, as given by the trial court is, word for word, out of the *Wisconsin Power & Light Co. Case.*[15] More recently, this court stated the test in identical language: " 'In Wisconsin "harm *must* be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence." . . .' " [16]

---

[14] *Id.* at pages 42, 43, stating: ". . . Defendant in constructing the road was under the duty to use *ordinary care* which must be determined in the light of existing circumstances. . . . The possibility of harm to the plaintiff's tower was foreseen by the defendant but the foreseeability of possible harm is not enough to constitute negligence. Harm must be reasonably foreseen as probable by a person of ordinary prudence under like circumstances. . . ." (Citing *Mondl v. F. W. Woolworth Co.* (1961), 12 Wis. 2d 571, 107 N. W. 2d 472; *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372; *Barnes v. Murray* (1943), 243 Wis. 297, 10 N. W. 2d 123.)

[15] *See:* Footnote 14.

[16] *University Dodge, Inc. v. Drott Tractor Co.* (1972), 55 Wis. 2d 396, 399, 198 N. W. 2d 621, citing and quoting *Meihost v. Meihost* (1966), 29 Wis. 2d 537, 545, 546, 139 N. W. 2d 116.

(Emphasis supplied.) The trial court's statement of the test in its jury instructions was entirely and absolutely correct.

**(4)** *Did the trial court err in excluding testimony as to foreseeability of harm?*

Appellant attempted to elicit from a witness expert testimony as to the foreseeability of damage to plaintiff's building and as to whether the water from the dredging operation could have been removed in a different manner. Defendant's counsel objected on the ground that a proper foundation had not been laid. The objection was sustained. Appellant made no offer of proof. Appellant also attempted to obtain expert testimony from another witness as to what advice he would have given a dredger or landfiller with respect to the operation in question. Defendant's counsel objected on the grounds of immateriality. The court sustained the objection. Once again, appellant made no offer of proof. An offer of proof is a condition precedent to having this court pass upon an allegedly erroneous ruling on admissibility of evidence.[17]

**(5)** *Are expert witness fees limited to $25 for each witness?*

The respondent had four expert witnesses each of whom testified on only one day but who were present at trial for four days. The respondent taxed, and the trial court allowed, a $25 expert witness fee for each witness for each of the four days of trial. Appellant contends that respondent was entitled to only $25 for each expert witness regardless of the number of days each such witness was in court. The applicable statute provides for ". . . an expert witness fee of $25 for each

[17] *Findorff v. Findorff* (1958), 3 Wis. 2d 215, 226, 88 N. W. 2d 327; *Deja v. State* (1969), 43 Wis. 2d 488, 492, 168 N. W. 2d 856.

expert who testifies, exclusive of the standard witness fee and mileage which shall also be taxed for each such expert . . . ." [18] In a case involving not the taxing of costs but the compensation of a witness as a condition of requiring him to submit to a deposition, this court held: ". . . It lies within the competence of the trial court to fix such compensation at whatever sum that court deems reasonable, but not to exceed $25 per day." [19] We see the case and the statutory reference, read together, as giving the trial court in this case authority to award witness fees and tax costs for expert witness fees at $25 for each expert witness for each day that such witness testifies in the proceedings. Such application of the *Reynolds* ruling and statutory provision requires modification of the judgment to provide for a $100, not $400, total allowance for expert witness fees ($25 for each expert witness for each day he actually testified).

*By the Court.*—Judgment, with regard to expert witness fees, modified in accordance with this opinion and, as modified, affirmed.

---

[18] Sec. 271.04 "Items of costs. When allowed costs shall be as follows:

". . .

"(2) DISBURSEMENTS. . . . an expert witness fee of $25 for each expert who testifies, exclusive of the standard witness fee and mileage which shall also be taxed for each such expert; . . ."

[19] *State ex rel. Reynolds v. Circuit Court* (1961), 15 Wis. 2d 311, 324b, 112 N. W. 2d 686, 113 N. W. 2d 537.