KONRAD and wife, Respondents, vs. THE STATE and/or WISCONSIN CONSERVATION DEPARTMENT, Appellant.

*June 2—June 26, 1958.*

534

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondents there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik.*

BROWN, J.   An inverse condemnation proceeding under ch. 32, Stats., is conducted at the expense of the taker. Sec. 32.15 (1), Stats.   Plaintiffs contend that they are entitled to their expenses as well as their taxable costs.  The expenses are substantial, particularly in view of their contract to pay a contingent fee to their attorneys.  While the judgment does not expressly state that ch. 32, Stats., does not afford a remedy to plaintiffs for a taking of their property by a state agency, plaintiffs so interpret it because of the failure of the judgment to allow them their expenses, and because of the trial court's memorandum decision to that effect and its conclusions of law reciting:

"3. That there is no statutory provision for service of process on the attorney general in an action for inverse condemnation against the state under chapter 32, Stats., and that no such service has ever been accomplished.
"4. That the Wisconsin Conservation Department is not an entity that can sue and be sued."

Plaintiffs' motion for review seeks relief under ch. 32, Stats.   Appellant's appeal seeks reversal of the judgment awarding damages and costs on the ground that there is no

competent evidence in support of the finding of fact that the dam caused the flooding of plaintiffs' land.

*Motion to Review.*

Ch. 32, Stats., is devoted to the subject of eminent domain and outlines procedures for condemning private property required for public purposes. Sec. 32.02, Stats., names the bodies to which the legislature gives condemnation powers. They include "any public board or commission." Sec. 23.09 (7) (d)—the Conservation Commission chapter,—also gives condemnatory powers to the commission. Sec. 32.04 prescribes the manner in which proceedings under ch. 32, Stats., are instituted. It is concerned principally with condemnations commenced by the bodies empowered to condemn but both sec. 32.04 and sec. 32.15 contemplate a situation where some "person" having condemnatory rights has taken property without condemning it. In that event "the party interested in such property may institute and conduct at the expense of such person the proceedings to a conclusion if such person delays or omits to prosecute the same." "The proceedings" refers to condemnation under this chapter and "person" is defined by sec. 32.01 (1) and includes the state, a board, or commission.

Sec. 32.04, Stats., contains this language:

> ". . . If any owner of property desires to institute condemnation proceedings, he shall present his verified petition therefor to the county or circuit judge of the county where the land is situated. Such petition shall describe the land, state *the board, commission, or corporation against which the condemnation proceedings are instituted,* and use to which it has been put or is designed to have been put by the board, *commission,* or corporation *against which the proceedings are instituted. . . .*" (Italics ours.)

These statutory provisions convince us that if the Conservation Commission has taken private property for public

use the owner may, in the absence of a condemnation *begun by* the commission, institute and conduct such proceedings *against* the commission.

The circuit court's fourth conclusion of law is: "That the Wisconsin Conservation Department is not an entity that can sue and be sued." Strictly speaking, we consider this to be true for we cannot find in the statutes, nor in the Wisconsin Blue Book, any entity having the title of Wisconsin Conservation Department. Apparently there is no such thing as a Conservation Department and proceedings against what does not exist are nullities.

If, however, plaintiffs' use of the word "department" is a mere misnomer and may be treated as "commission" we reach a different conclusion. For the purposes of this appeal we treat plaintiffs' use of the word "department" as a misnomer—the equivalent of "commission,"—although it is not clear to us that the learned trial court so considered it.

Even so, if plaintiffs' proceeding *was* against the commission, and not against a nonexistent department, it was defective for lack of notice to or service upon the commission. Sec. 32.05, Stats., demands notice of the hearing of plaintiffs' petition to "be served upon all interested at least twenty days before said hearing. . . ." We think that such notice includes service of a copy of the petition which is to be heard. The Conservation Commission is certainly "interested," being a party proceeded against. It is composed of six members; it has an office in the capitol and a staff headed by a director. Sec. 23.09 (2), (5), and (6). It would not seem difficult to give directly to the commission any notice which a party wished to call to its attention. To deliver to the attorney general such notices, which is all the plaintiffs did, does not seem to us to be a compliance with the requirements of service of notice on the commission. In this respect plaintiffs' proceedings were defective in their inception, and

resulted in a lack of jurisdiction over the commission. Objection on this ground was timely made. The circuit court correctly held that plaintiffs' proceeding under ch. 32, Stats., as against the commission,—the court said "department,"—is void.

We must still consider plaintiffs' proceeding under ch. 32, Stats., directly against the state.

Sec. 32.01 (1), Stats., declares that "person" includes the state. Sec. 32.02 names the various entities which may condemn property. The state is nowhere named, although many of its agencies are. The only mention of a "person" which (or who) may condemn is in sec. 32.02 (12), and applies only to a person who operates a plant which causes stream pollution. This is not such a case.

Undoubtedly the state could, if it chose, condemn private property for public use. That is an attribute of sovereignty. The exercise of the right is limited by sec. 13, art. I, Const., declaring:

"The property of no person shall be taken for public use without just compensation therefor."

But the state cannot be sued without its consent and only in the manner and under the procedure by which it has consented to be sued.

"It is not disputed that it is an established principle of law that no action will lie against a sovereign state in the absence of express legislative permission. It is further established that when a sovereign permits itself to be sued upon certain conditions, compliance therewith is a jurisdictional matter, and a suit against the sovereign may not be maintained unless such conditions are complied with." *State ex rel. Martin v. Reis* (1939), 230 Wis. 683, 685, 284 N. W. 580.

Further:

"This raises for consideration the question whether a statute of general application containing no specific provision to

the effect that the state is within it, applies to the state itself. It is universally held, both in this country and in England, that such statutes do not apply to the state unless the state is explicitly included by appropriate language." *State ex rel. Martin v. Reis, supra,* page 687.

Ch. 32, Stats., does not include the state as a separate entity by express, appropriate language except as a person and limited to a polluter of streams, per sec. 32.02 (12), Stats. Enumeration of various state agencies in sec. 32.02, with the omission of the state, itself, is persuasive that the state's condemnatory powers are to be exercised through the agencies and we conclude that the inverse condemnation features of sec. 32.04 and sec. 32.15 (1) apply, as we have said, against those agencies named, but not against the state, as a separate entity, which is not named.

Sec. 13, art. I, Const., demands compensation to the owner whose property has been taken, but to recover such compensation the procedure must be that which the state directs. We hold that a direction that the owner may recover compensation by proceeding against the state agency which took the property satisfies sec. 13, art. I.

The motion to review is denied.

*The Appeal.*

The trial court adjudged recovery by plaintiffs on their alternative cause of action under ch. 285, Stats., which provides that a person aggrieved may file a claim with the legislature and sue the state directly on the claim if the legislature denies it.

On its appeal the state's only contention is that the evidence does not support the finding of the special verdict that the construction of dike No. 6 and the filling of the pond to the north thereof by the state of Wisconsin, permanently destroyed the Konrad farm for farming purposes. Indeed, the state concedes, and even urges, that ch. 285, Stats., provides relief to plaintiffs if there has in fact been a taking of

their property. The appeal, then, does not challenge the applicability of that chapter or plaintiffs' right to maintain their alternative cause of action under it. The only issue which the appeal presents is the cause of the flooding of plaintiffs' farm. The value of the farm is not in dispute. If plaintiffs prove the dam caused the trouble the taking of their property by those responsible for the dam is proved.

"The allegations of the complaints and concerning which testimony was offered, clearly showed that the plaintiffs relied, in seeking to recover damages from the defendant, that they, as owners of real estate submerged or undermined by the ponding of the water in defendant's dam, were deprived, by reason thereof, of a substantial use of the lands or sustained a substantial interference with their rights of possession. Such claimed damages, if properly chargeable to the backwater in defendant's dam, was a taking of the property rights of plaintiffs in their respective real-estate holdings, within the meaning of that term in the statutes regulating condemnation proceedings." *Benka v. Consolidated Water Power Co.* (1929), 198 Wis. 472, 474, 224 N. W. 718.

Consideration of the question of causation requires further examination of the evidence. Appellant contends that the only competent evidence on this question is expert evidence.

The state had an expert witness; the owners had none. The expert testified that the soil between the farm and the pond was impervious to water and, accordingly, the pond could not have caused the flood conditions on the farm. The expert attributed the flooding to excessive rainfall occurring after the dike was built. The state's statistics showed that in some, but not all of those years, there was rainfall above normal.

The records showed that there were years before 1951 when precipitation was greater than at any time since; they also showed that since 1951 there had been years in which rainfall was less than normal. The Konrads had no expert but they had numerous lay witnesses who were fa-

miliar with the farm and had been so for many years in the past. These witnesses testified that the land had always been dry enough to be farmed before 1951 when the dike was built, regardless of rainfall and, regardless of rainfall, it never was dry enough thereafter. Counsel for the state criticizes the Konrad argument,—that the dike must have been the cause of the changed farming conditions,—as merely *"post hoc." "Post hoc, propter hoc"* is not necessarily true but it is not necessarily false either. We think the lay testimony was material and competent. Evidence which the jury might believe shows that in the good old days before the Conservation Commission built the dike successive owners of the land were always able to farm it notwithstanding rainfall which was frequently excessive while after construction of the dike they never could farm it even when precipitation was deficient. Rainfall as a cause appears to be ruled out. The only remaining cause left for the change in the moisture content of the soil is the presence of the dike. There is competent evidence to support the verdict. Therefore the judgment must be affirmed.

*By the Court.*—Judgment affirmed. Motion to review denied.