Rose ZINN, Plaintiff-Respondent-Petitioner,

v.

STATE of Wisconsin, Defendant-Appellant.†

Supreme Court

*No. 81–1772. Argued April 27, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 67.)

† Motion for consideration denied, without costs, on August 9, 1983. CECI and BABLITCH, JJ., took no part.

418

For the petitioner there were briefs by *Thomas O'Meara, Jr., Andrew T. Gonring and O'Meara, Eckert & Pouros,* West Bend, and oral argument by *Mr. Gonring.*

For the defendant-appellant the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J. This is a review of an unpublished opinion of the court of appeals which reversed the trial court's order, Judge J. Tom Merriam of Washington county, presiding. The trial court's order denied the defendant's motion to dismiss the plaintiff's complaint.

The plantiff, Rose Zinn, is the owner of a parcel of real estate in the Town of Erin in Washington county. This real estate completely surrounds McConville Lake,[1] giving Zinn sole riparian rights to the lake. McConville Lake is a public navigable lake which has a surface area of approximately 14 acres and a maximum depth of 30 feet. On January 7, 1976, a petition was filed with the Department of Natural Resources (DNR) by William

---

[1] There is a discrepancy in the record as to the correct spelling of "McConnville Lake." The plaintiff in her complaint spells the name with two "n's." However, because both parties spell McConville Lake with one "n" in their briefs before this court, we will use that spelling.

McConville, a neighbor of Zinn. The petition sought a declaratory ruling on the applicability of secs. 30.10(1) and 30.10(4)(b), Stats., to McConville Lake, which, in turn, required a determination of the ordinary high water mark (OHWM) of the lake.

Following a hearing before a DNR employee, the DNR, on July 22, 1977, issued Findings of Fact, Conclusions of Law and a ruling determining that the existing level of McConville Lake corresponded to Contour 980 of the United States Geological Survey, Merton Quadrangle, while the OHWM of the lake corresponded to Contour 990. Between the elevations of Contour 980 and Contour 990 lie approximately 200 acres of Zinn's property. The effect of the ruling was to increase the surface area of the lake, on paper, to more than 1900 acres and extended the OHWM beyond the boundaries of Zinn's property, thus depriving Zinn of the sole riparian rights she had enjoyed until this ruling. The 200 acres of Zinn's dry land that was declared to be within the OHWM were, according to the plaintiff's complaint, titled to the state in trust for the public pursuant to sec. 30.10(1), Stats.

Because the ruling threatened Zinn with the loss of approximately 200 acres of her land for public use, she petitioned the DNR for a rehearing which was granted on August 29, 1977. A rehearing was held and on March 14, 1979, the DNR issued an order rescinding and withdrawing the Findings of Fact, Conclusions of Law and ruling issued on July 22, 1977. An amended ruling was also issued establishing the OHWM of McConville Lake at 980.3 mean sea level datum, and thus restoring Zinn as sole riparian owner on McConville Lake. A subsequent Petition for Judicial Review filed by McConville was dismissed by the Washington County Circuit Court in December of 1979.

On November 20, 1980, Zinn commenced this action against the State of Wisconsin, alleging that the above

facts constituted an unconstitutional taking of her property for public use without just compensation in violation of Art. I, sec. 13 of the Wisconsin Constitution. The complaint alleged that the original DNR ruling was "unlawful, unreasonable, arbitrary, capricious, and clearly contrary to the physical facts" and that the ruling "unduly relied" on the testimony of a DNR employee whose opinion that the OHWM of the lake corresponded to Contour 990 "could not have been made in good faith or without a high degree of negligence." The complaint further alleged that the ruling deprived the plaintiff of all reasonable use of her property between July 22, 1977 (original DNR ruling) and March 14, 1979 (original ruling rescinded), and that during this period the state had possession and use of her land. The complaint requested damages for this "inverse condemnation," including $50,-000 in compensatory damages and $15,000 for litigation expenses necessary to effect the reversal of the original DNR ruling.

The state moved to dismiss on a number of grounds, including failure to state a claim upon which relief could be granted and the doctrine of sovereign immunity. The trial court denied the motion, holding that the complaint stated a claim based on the "just compensation" clause of the Wisconsin Constitution, finding that the original DNR ruling constituted a temporary taking of the Zinn property for public use. It also held that the defense of sovereign immunity was unavailable to the state when an unconstitutional taking is alleged and that under ch. 32, Stats., the state had consented to such suits even though the inverse condemnation remedy of sec. 32.10 could not be practically applied to a temporary taking.

The court of appeals reversed. The court held that the case was governed by this court's decision in *Howell Plaza, Inc. v. State Highway Comm.*, 92 Wis. 2d 74, 284 N.W.2d 887 (1979). Interpreting *Howell Plaza*, the

court of appeals held that no taking occurs when the landowner is deprived of property only for a temporary period and that a taking may occur, absent physical invasion by the government, only if there is a legally imposed restriction on the property use. Applying this analysis, the court found that because the rehearing was granted just one month after the original DNR ruling, she was deprived of the use of her property only temporarily and therefore no taking occurred. It further held that the complaint did not allege any restrictions placed on the property by the DNR. We granted the plaintiff's petition for review.

This review comes before this court on a motion to dismiss. Thus the sole issue before the court is whether the plaintiff's complaint states a claim upon which relief can be granted. In determining whether the complaint was properly dismissed by the court of appeals, "we apply the familiar test that the pleadings are to be liberally construed to do substantial justice between the parties, and the complaint should be dismissed as legally insufficient only if it appears to a certainty that no relief can be granted under any set of facts that the plaintiff can prove in support of her allegations." *Strid v. Converse,* 111 Wis. 2d 418, 422, 331 N.W.2d 350 (1983).

The plaintiff's complaint alleges that the erroneous ruling by the DNR that the OHWM of McConville Lake was at 990 rather than the existing lake level resulted in the state temporarily taking title to approximately 200 acres of Zinn's dry land as trustee for the public of all lands within the OHWM of navigable waters. The complaint further alleges that the plaintiff was not justly compensated for the period in which such land was titled to the state and in the public domain. We hold that under the facts alleged the plaintiff has stated

a claim for relief under Art. I, sec. 13 of the Wisconsin Constitution.

Art. 1 sec. 13 of the Wisconsin Constitution provides:

"The property of no person shall be taken for public use without just compensation therefore."

Governmental action which merely causes damage to private property is not the basis for compensation under this provision of the state constitution. *DeBrunin v. Green County,* 72 Wis. 2d 464, 470, 241 N.W.2d 167 (1976). Rather, in order to trigger the "just compensation" clause there must be a "taking" of private property for public use. *Id.* A "taking" in the constitutional sense occurs when the government restriction placed on the property " 'practically or substantially renders the property useless for all reasonable purposes.' " *Howell Plaza, Inc. v. State Highway Comm.,* 92 Wis. 2d 74, 85, 284 N.W.2d 887 (1979), quoting *Buhler v. Racine County,* 33 Wis. 2d 137, 143, 146 N.W.2d 403 (1966). A taking can occur short of actual occupation by the government if the restriction "deprives the owner of all, or substantially all, of the beneficial use of his property." *Howell Plaza, Inc. v. State Highway Comm.,* 66 Wis. 2d 720, 726, 226 N.W.2d 185 (1975). However, "[a] taking can occur absent physical invasion only where there is a legally imposed restriction upon the property's use." *Howell Plaza,* 92 Wis. 2d at 88.

Thus, the threshold question is whether the plaintiff's property was "taken." This involves the difficult determination of whether an erroneous ch. 227 administrative decision by the DNR can result in the "taking" of private property thus triggering the just compensation clause.

In order to determine whether the DNR's declaratory ruling amounted to a taking, we must examine the authority of the DNR to make the ruling and the effect of

that decision on Zinn's property. The declaratory ruling was made pursuant to a petition filed by William Mc-Conville, who apparently owned land near McConville Lake, which requested the DNR to declare the applicability of secs. 30.10(1) and 30.10(4)(b), Stats. 1975,[2] to Lake McConville. At the time of this petition Zinn had sole riparian rights to the lake. Pursuant to its authority under sec. 227.06(1), Stats. 1975,[3] the DNR

[2] Sec. 30.10(1), Stats., provides:

"**30.10 Declarations of navigability.** (1) LAKES. All lakes wholly or partly within this state which are navigable in fact are declared to be navigable and public waters, and all persons have the same rights therein and thereto as they have in and to any other navigable or public waters."

Sec. 30.10(4)(b), Stats., provides:

"(4) **Interpretation.** . . .

(b) The boundaries of lands adjoining waters and the rights of the state and of individuals with respect to all such lands and waters shall be determined in conformity to the common law so far as applicable, but in the case of a lake or stream erroneously meandered in the original U.S. government survey, the owner of title to lands adjoining the meandered lake or stream, as shown on such original survey, is conclusively presumed to own to the actual shore lines unless it is first established in a suit in equity, brought by the U.S. government for that purpose, that the government was in fact defrauded by such survey. If the proper claims of adjacent owners of riparian lots of lands between meander and actual shore lines conflict, each shall have his proportion of such shore lands."

[3] Sec. 227.06(1), Stats., provides:

"**227.06 Declaratory rulings.** (1) Any agency may, on petition by any interested person, issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforced by it. Full opportunity for hearing shall be afforded to interested parties. A declaratory ruling shall bind the agency and all parties to the proceedings on the statement of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the circuit court in the manner provided for the review of administrative decisions."

All references to secs. 30.10(1), 30.10(4)(b) and 227.06(1), Stats., are to the 1975 statutes.

issued a ruling declaring that the OHWM of McConville Lake was at Contour 990, rather than at the existing lake level which was found to be at Contour 980. Because of the location of Zinn's property in relation to these contours, the ruling had the effect, on paper, of placing approximately 200 acres of Zinn's dry land within the declared OHWM of the lake. The placement of the OHWM at Contour 990 extended McConville Lake beyond the boundaries of Zinn's property and into Waukesha county. Because the DNR had the authority to make this ruling which was binding on Zinn pursuant to sec. 227.06(1), and because all land lying within the OHWM of a navigable lake is titled in the state in trust for the public, sec. 30.10(1), the ruling had the legal effect of converting approximately 200 acres of Zinn's property into land titled in the state.[4] The ruling destroyed the sole riparian rights Zinn had enjoyed as the owner of all shorelands along McConville Lake and opened the land for public use under the trust doctrine. *Muench v. Public Service Comm.*, 261 Wis. 492, 53 N.W. 2d 514, 55 N.W.2d 40 (1952); *Doemel v. Jantz*, 180 Wis. 225, 193 N.W. 393 (1923).

Because the DNR's ruling, which was within its statutory authority to make, converted Zinn's private property by operation of law into public lands, there can be no

---

[4] The drastic legal effect the DNR's declaratory ruling had on Zinn's property rights is conceded by the state:

"There is no question but the difference of levels between the first and second OHWM determinations would seriously impact upon the riparian owners on McConville Lake. It is also conceded that the legal effect of such ruling was that all land below the ordinary high water mark as finally established would be titled in the State of Wisconsin. However, that merely happens to be the law of this state, *Muench v. Public Service Comm.*, 261 Wis. 492, 53 N.W.2d 514, 55 N.W.2d 40 (1952)." State of Wisconsin's court of appeals brief, p 12.

dispute that there was a "taking" within the meaning of Art. I, sec. 13. Contrary to the holding of the court of appeals, we find that this ruling which transferred title to Zinn's land to the state constituted a legally imposed restriction on Zinn's property under this court's decision in *Howell Plaza* (1979). It is difficult to conceive of a greater restriction on the property, in the absence of actual physical occupancy, than the loss of title to private land. We find that the allegations of the complaint, which demonstrate that the plaintiff temporarily lost title to her land to the state, are sufficient without more to allege a constitutionally compensable taking. The court of appeals concern with the absence of allegations in the complaint as to the actual restriction on the *use* of Zinn's land as a result of the ruling is a matter of the proof as to the amount of damages suffered by Zinn and is not relevant in the context of a motion to dismiss.

We also disagree with the court of appeal's holding that a taking can not occur when the governmental restraint on the property is only temporary. Because the original ruling of the DNR was later rescinded by the DNR, it is clear that the alleged "taking" was only temporary.[5] However, it would violate the constitutional

---

[5] Zinn alleges that the ruling was in effect until March 14, 1979, when it was rescinded and thus the "taking" was for the entire period between July 22, 1977 and March of 1979. The state argues that pursuant to sec. 227.12(2), Stats. 1975, the ruling was suspended on August 29, 1977, when the rehearing was granted and had no effect after this point. The court of appeals agreed. Even if the court of appeals and the state are correct that sec. 227.12(2) rescinded the original ruling, it is clear that Zinn lost title to her property for just over one month and at least had title clouded for the remaining year and one-half. If she can prove her allegation she will be entitled to damages for the entire time period. However, while it is clearly important in determining the measure of *damages* to determine the length of time she actually lost her title to the land, we find it inappropri-

mandate of the just compensation clauses of the Wisconsin and United States Constitutions to hold that a temporary taking is not compensable. Justice Brennan discussed the issue of whether invalidation of a regulation which takes property is sufficient to meet the requirement of the Just Compensation Clause of the Fifth Amendment without paying monetary compensation in his dissent[6] in *San Diego Gas & Electric Co. v. San Diego,* 450 U.S. 621, 653–54, 657 (1981):

"In my view, once a court establishes that there was a regulatory 'taking,' the Constitution demands that the government entity pay just compensation for the period commencing on the date the regulation first effected the 'taking,' and ending on the date the government entity chooses to rescind or otherwise amend the regulation. This interpretation, I believe, is supported by the express words and purpose of the Just Compensation Clause, as well as by cases of this Court construing it.

"The language of the Fifth Amendment prohibits the 'tak[ing]' of private property for 'public use' without payment of 'just compensation.' As soon as private property has been taken, whether through formal condemnation proceedings, occupancy, physical invasion, or regulation, the landowner has *already* suffered a constitutional violation, and ' "the self-executing character of the constitutional provision with respect to compensa-

ate based on the record before us (the actual decision by the DNR is not in the record) to determine this issue. This issue will have to be determined by the trial court on remand.

[6] In *San Diego,* the majority refused to address the merits of the case because it found that it lacked jurisdiction because the state court's decision was not final. Justice Brennan in his dissent disagreed and therefore discussed the merits of the appellant's appeal. Justice Rehnquist, although concurring in the plurality's holding that there was no jurisdiction, stated that if he believed the court had jurisdiction he "would have little difficulty in agreeing with much of what is said in the dissenting opinion of Justice Brennan." 450 U.S. at 633–34. Thus, Justice Brennan's dissent may well be the majority opinion in a case presenting a final judgment.

tion," ' *United States v. Clarke,* 445 U.S. 253, 257 (1980), quoting 6 J. Sackman, Nichols' Law of Eminent Domain Sec. 25.41 (rev. 3d ed. 1980), is triggered. This Court has consistently recognized that the just compensation requirement in the Fifth Amendment is not precatory: once there is a 'taking,' compensation *must* be awarded. . . .

"  . . .

"The fact that a regulatory 'taking' may be temporary, by virtue of the government's power to rescind or amend the regulation, does not make it any less of a constitutional 'taking.' Nothing in the Just Compensation Clause suggests that 'takings' must be permanent and irrevocable. Nor does the temporary reversible quality of a regulatory 'taking' render compensation for the time of the 'taking' any less obligatory. This Court more than once has recognized that temporary reversible 'takings' should be analyzed according to the same constitutional framework applied to permanent irreversible 'takings.' "

We agree. The test to determine whether there was a taking is whether the government action deprived the property owner of all or substantially all beneficial use of the property. While the length of the time period of the restriction is a factor in determining whether such a deprivation has occurred once this test is satisfied there has been taking even though the property owner has regained full use of the property due to the government's rescission of the restriction. The governmental unit which has taken the property must then provide just compensation for the period of the taking. Therefore the fact that the DNR's ruling which took Zinn's property was later rescinded does not prevent Zinn, if her allegations are proven at trial, from recovering just compensation for the period in which her property was taken.

We also disagree with the arguments of the state that the DNR ruling cannot constitute a taking. It first

contends that the DNR declaratory ruling did not constitute a "taking" because there the DNR did not have authority to take private property and there was no intent by the DNR in issuing the ruling to take Zinn's property. The DNR, as discussed above, clearly had the authority to declare the position of the OHWM of Lake McConville. Secs. 30.10(1), 30.10(4)(b) and 227.06, Stats. 1975. More importantly, the legal effect of the decision was to vest title to 200 acres of Zinn's property in the state for public use.

It is well established that " 'the constitution measures a taking of property not by what a state says, or by what it intends, but by what it *does.*' " *San Diego,* 450 U.S. at 652–53, (Brennan, J. dissenting), quoting *Hughes v. Washington,* 389 U.S. 290, 298 (1967) (Stewart, J., concurring). It is the *effect* of the state's action that triggers the Just Compensation Clause, not the intent of the government in taking the action which led to the deprivation of private property rights. If government action has the effect of taking private property for public use, just compensation must be made. Decisions of this court make it clear that the intent of the government has never been the test, rather we look to whether the impact on the property owner was to deprive him or her of substantially all beneficial use of the property or render the land useless for all reasonable purposes. *E.g., State v. Herwig,* 17 Wis. 2d 442, 117 N.W.2d 335 (1962) (hunting regulation created a game refuge on private property) ; *Huebner v. Advance Refrigerator Co.,* 200 Wis. 233, 227 N.W. 868 (1929) (street improvements cause destruction of lateral support to abutting property) ; *Peterson v. Wisconsin River Power Co.,* 264 Wis. 84, 58 N.W.2d 287 (1953) ; *Benka v. Consolidated Water Power Co.,* 198 Wis. 472, 224 N.W. 718 (1929) (loss of crops due to flooding of lands by dam).

The state also contends that a decision by an administrative agency should not, on public policy grounds, be

held to constitute a taking. It relies on the United States Supreme Court's decision in *Butz v. Economou,* 438 U.S. 478 (1978), in which the Court held that federal hearing examiners are immune from damage suits based on the decision they render in administrative agency adjudications. *Butz* and other civil immunity cases simply have no application to this case. Those cases involve civil liability actions against the decision-maker in his or her individual capacity. Such government officials are given immunity from such suits in order to allow the hearing examiner to exercise independent judgment in agency adjudication free from fear of personal liability for their decisions.

This case involves not a suit against the individual DNR hearing examiner but an action against the state to receive the "just compensation" that is constitutionally mandated whenever private property is taken for public use. Once property is taken in the constitutional sense, just compensation is constitutionally required. The civil immunity of the individual decision-maker whose decision resulted in the taking has nothing to do with this constitutional requirement. Clearly, state legislators have absolute immunity from those actions performed in the scope of their legislative functions. However, if legislation is enacted which results in the taking of private property, compensation must be paid, although individual legislators are not personally liable for such compensation. Further, the state's public policy argument, that agency decision-making will be chilled if such suits are allowed, must also fail because, as stated by Justice Brennan in discussing the Just Compensation Clause of the Fifth Amendment: ". . . the applicability of express constitutional guarantees is not a matter to be determined on the basis of policy judgments made by the legislative, executive or judicial branches." *San Diego,* 450 U.S. at 661 (Brennan, J., dissenting).

We therefore hold that the plaintiff has alleged facts which state a claim based on Art. I, sec. 13 of the Wisconsin Constitution in that the state temporarily took her property without just compensation.

Because we have found that the complaint alleges a "taking" without just compensation in violation of the Wisconsin Constitution, we must next determine what remedy is available to the plaintiff. The state contends that the inverse condemnation remedy provided in sec. 32.10, Stats. 1979–80,[7] is unavailable to the plaintiff because the state has not consented to suit under this provision and therefore the plaintiff's claim is barred by the doctrine of sovereign immunity. While we agree that sec. 32.10 does not provide a remedy for the plaintiff under the facts alleged, we disagree that this requires dismissal of her complaint.

Eminent domain is the power of the sovereign to take private property without the owner's consent. Ch. 32 of the Wisconsin statutes sets out the procedure the government must follow in acquiring such property for public use. However, sometimes the government takes property without first condemning the property and paying just compensation. Sec. 32.10, Stats.,[8] allows

[7] All references to sec. 32.10, Stats., are to the 1979–80 statutes.

[8] Sec. 32.10, Stats. 1979–80, provides:

"**32.10 Condemnation proceedings instituted by property owner.** If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted. A copy of the petition shall be served upon the person who has occupied petitioner's land, or interest in land. The petition shall be filed in the office of the clerk of the circuit court and thereupon

a landowner, who believes that his or her property has been taken by the government without instituting formal condemnation proceedings, to commence an action to recover just compensation for the taking. This remedy is based on Art. I, sec. 13 of the Wisconsin Constitution, *Howell Plaza*, 66 Wis. 2d at 723 (1975), and is the legislative direction as to how the mandate of the just compensation clause is to be fulfilled.

However, as recognized by the trial court, sec. 32.10, Stats., by its terms, simply does not apply to the type of taking alleged here. The statute is designed solely to deal with the traditional exercise of eminent domain by the government: the government has occupied private property, plans to continue such occupation and the landowner is merely requesting just payment for this land. In effect the land which has been taken by the government without first commencing condemnation proceedings is sold to the government by the landowner.

But this is not the situation presented by the facts alleged in the complaint. Here, the state, through the action of the DNR, has for a temporary period taken title to the plaintiff's land. The ruling affecting the title transfer has since been rescinded and the state does not want the land and the plaintiff does not want to "sell" the land to the state. The landowner simply wants just compensation for the period in which the state took

the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the occupying person as defendant. The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this chapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied."

the property which has since been returned. Sec. 32.10, Stats., was simply not designed to remedy this type of taking.

Further, this court has held the remedy provided in sec. 32.10, Stats., cannot be used against the state because the state, under the doctrine of sovereign immunity, has not consented to be sued pursuant to sec. 32.10. *Konrad v. State,* 4 Wis. 2d 532, 538–39, 91 N.W.2d 203 (1958); *see also, Herro v. Wisconsin Fed. Surp. P. Dev. Corp.,* 42 Wis. 2d 87, 116–17, 166 N.W.2d 433 (1969). Rather, under the procedure provided in sec. 32.10, the aggrieved landowner must sue the state agency which has taken the property. However, in this case there can be no action against the state agency because the DNR, except in specific circumstances not applicable here, does not have the power to condemn, sec. 32.02(16), which is a prerequisite to suit under sec. 32.10. Thus, we agree with the state that sec. 32.10 does not provide a remedy for the plaintiff.

However, contrary to the assertion of the state, this does not mean that the plaintiff has no remedy against the state. The state attempts to shield itself from liability under the doctrine of sovereign immunity in support of its motion to dismiss. The concept of sovereign immunity derives from Art. IV, sec. 27 of the Wisconsin Constitution:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

This provision has been consistently construed by this court to mean that the state cannot be sued without its consent. *Lister v. Board of Regents,* 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976). Under this provision the legislature has the exclusive right to consent to suits

against the state. *Fiala v. Voight,* 93 Wis. 2d 337, 342, 286 N.W.2d 824 (1980). This immunity is procedural in nature and, if applicable and properly raised, deprives the court of personal jurisdiction. *Lister,* 72 Wis. 2d at 291.

We conclude that the doctrine of sovereign immunity has only limited applicability to actions against the state which allege a constitutional taking of private property without just compensation. It is a well-established principle, although apparently never expressly recognized by this court, that the doctrine of sovereign immunity can not bar an action for just compensation based on the taking of private property for public use, even though the legislature has failed to establish specific provisions for the recovery of just compensation.

As stated in Comment a. to sec. 895B of Restatement, 2 Torts (Second) at 400:

". . . As for suit brought against the State in its own courts, consent is obviously required. In many States the rule that the State cannot be sued without its consent is written into the constitution. Some state constitutions prohibit the giving of consent. On the other hand, consent to suit, in some respects at least, may be implied from constitutional provisions. Thus most constitutions have a provision prohibiting the taking of property for public purposes without just compensation. These provisions have usually been held to be self-executing and to constitute a consent to suit, so that even though the legislature has failed to establish any procedure for litigating the claims, resort to the courts is held to be open for a 'taking,' or, in many States, a damaging of private property for a public purpose within the terms of the constitution. This is often called inverse condemnation. . . ."

This principle was further explained by the Connecticut Supreme Court in *Laurel, Inc. v. State,* 169 Conn 195, 200, 362 A.2d 1383 (1975):

"The first special defense of the defendants to the plaintiff's action was that of sovereign immunity. It is clear that if there is a constitutional taking of property by the condemning authority and if there is no statutory provision for the awarding of damages, the court does have jurisdiction to determine the plaintiff's remedy. *Hooker v. New Haven & Northampton Co.,* 14 Conn. 146, 159, 160; see *Textron, Inc. v. Wood,* 167 Conn. 334, 342, 355 A.2d 307; *Karp v. Urban Redevelopment Commission,* 162 Conn 525, 529–30, 294 A.2d 633; *Cone v. Waterford,* 158 Conn. 276, 280, 259 A.2d 615. If there is no legislation that makes provision for compensation for property taken, '[t]he Constitution does; and that is enough.' *McKeon v. New York, N.H. & H.R. Co.,* 75 Conn. 343, 348, 53 A. 656."

*See also, SRB v. Board of Cty. Com'rs, Cty. of Larimer,* 601 P.2d 1082, 1085 (Colo. App. 1979) ; *New Hampshire Water Resources Board v. Pera,* 226 A.2d 774, 775 (N.H. 1967) ; *Grant Construction Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005 (1968). Prosser, *Law of Torts* (4th ed), p. 977, sec. 131 (hornbook series).

These authorities clearly demonstrate that Art. I, sec. 13 of the Wisconsin Constitution is self-executing and needs no express statutory provision for its enforcement. This is because just compensation following a taking "is a constitutional necessity rather than a legislative dole." *Luber v. Milwaukee County,* 47 Wis. 2d 271, 277, 177 N.W.2d 380 (1970). The "waiver" to the doctrine of sovereign immunity is found in the constitution itself and thus no legislative direction pursuant to Art. IV, sec. 27 is necessary.

This court has implicitly recognized these principles in *Konrad v. State,* 4 Wis. 2d 532, 91 N.W.2d 203 (1958), and *Luber v. Milwaukee County,* 47 Wis. 2d 271, 177 N.W.2d 380 (1970). In *Konrad* the court held that requiring the injured landowner to sue the state agency

which took its property rather than the state under sec. 32.10, Stats., was constitutionally permissible, stating:

"Sec. 13, art. I, Const., demands compensation to the owner whose property has been taken, but to recover such compensation the procedure must be that which the state directs. We hold that a direction that the owner may recover compensation by proceeding against the state agency which took the property satisfies sec. 13, art I."

In *Luber,* the court held that the limit imposed by the legislature on the amount of rental loss recoverable in condemnation proceedings pursuant to sec. 32.19 (4) was unconstitutional, stating:

"We believe that one's interest in rental loss is such as is required to be compensated under the 'just compensation' clause of art. I, sec. 13, Wisconsin Constitution. Sec. 32.19 (4), Stats., insofar as it limits compensation for the taking of such interest is in conflict with the state constitution. The rule making consequential damages *damnum absque injuria,* is, under modern constitutional interpretation, discarded and sec. 32.19 (4) insofar as it limits compensation is invalid." 47 Wis. 2d at 283.

Thus both *Konrad* and *Luber* recognize that the legislature's exclusive right to consent to suit against the state is limited by Art. I, sec. 13 of the constitution.

The above analysis leads to the conclusion that the two provisions of the Wisconsin Constitution involved here, the doctrine of sovereign immunity and the just compensation clause, must be read together. Under the just compensation clause a property owner has a constitutionally mandated right to be compensated for property taken by the state and the absence of any statute providing for such a remedy does not bar the action. However, under Art. IV, sec. 27, the legislature can provide specific procedures governing the recovery of such

compensation as long as the procedure provides "just compensation." If such legislation is enacted, the property owner must follow those procedures in order to receive the compensation. If there is no statute providing for recovery of just compensation, then the injured property owner may proceed directly under Art. I, sec. 13 of the constitution.

In this case the procedure proscribed under sec. 32.10, Stats., does not apply to the type of "taking" that is presented by the facts alleged in the plaintiff's complaint. But because the complaint alleges a constitutional "taking," the plaintiff has stated a claim based directly on Art. I, sec. 13 of the constitution and no statutory remedy is necessary in order to enforce this right. We therefore remand the action to the trial court.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). Zinn has survived the first test of whether she states a claim, but many legal questions necessary to resolve the action remain undecided, *see* p. 427, note 5, and it appears that proof of damage will be difficult. The trial court may determine, in interpreting and applying sec. 227.12 (1), (2), (5) to this case, that the DNR ruling might never have taken effect and that because of DNR's right to reconsider its ruling and its granting of petition to reconsider, the DNR ruling was always subject to modification and therefore never attained the degree of "finality" needed to render it a "taking." The majority suggests that even after the DNR granted Zinn's petition for rehearing, which may have ended a "taking" of her title, there remained a cloud on the title. The majority does not determine whether any asserted cloud on Zinn's title constitutes a taking or can otherwise be the basis of a damages award.