COURT OF APPEALS
DECISION
DATED AND FILED

June 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP1441**

Cir. Ct. No.  2014CV2274

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

COOLIDGE A L.L.C. AND COOLIDGE B L.L.C.,

PLAINTIFFS-APPELLANTS,

V.

CITY OF WAUKESHA AND D.F. TOMASINI CONTRACTORS, INC.,

DEFENDANTS-THIRD-PARTY
PLAINTIFFS-RESPONDENTS,

V.

D.F. TOMASINI CONTRACTORS, INC., BITCO GENERAL INSURANCE
P/K/A BITUMINOUS FIRE AND MARINE INSURANCE, ACUITY, A
MUTUAL INSURANCE COMPANY AND STATE CONTRACTORS INC.,

THIRD-PARTY DEFENDANTS-RESPONDENTS.

APPEAL from orders of the circuit court for Waukesha County: JENNIFER R. DOROW, Judge.  *Affirmed*.

Before Neubauer, C.J., Gundrum and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Coolidge A L.L.C. and Coolidge B L.L.C. (hereinafter, collectively "Coolidge") appeal from orders granting summary judgment in favor of the City of Waukesha and the City's contractor, D.F. Tomasini Contractors, Inc., and dismissing the property damage claims brought by Coolidge arising from a public works project commissioned by the City and completed by Tomasini. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Coolidge owns an apartment building that was constructed on top of a landfill located near the intersection of Coolidge Avenue and Scott Avenue. The prior property owners had entered into a settlement agreement with the City to close the landfill. In exchange for not having to contribute financially to the cleanup of the landfill, the prior property owners agreed to release the City from "any property damage claims related to or arising from the Contamination or the condition of the Site or the Property."

¶3 In 2013, the City began a public works project replacing the water and sewer mains that run down the middle of both avenues. Pursuant to its contract with the City, Tomasini dug up the streets, replaced the sewer and water pipes, and backfilled the trenches so that the streets could be repaved. Tomasini compacted the final layer of fill using a vibrating drum roller.

¶4      Coolidge filed suit alleging several causes of action, all premised on the notion that the construction work performed by Tomasini produced vibrations that caused the soil supporting the Coolidge property to differentially settle, which damaged the property and made it uninhabitable.  Coolidge's complaint alleged negligence against both the City and Tomasini.  Coolidge alleged that the City acted negligently by failing to warn Tomasini about the condition of Coolidge's building and failing to require Tomasini to protect the building.  As to Tomasini, Coolidge alleged that it was negligent for failing to inspect Coolidge's building, for using a vibratory roller to compact the fill, and for failing to monitor the vibrations caused by its compacting work.  Coolidge brought three additional causes of action against the City:  intentional nuisance; inverse condemnation; and indemnification.

¶5      The City and Tomasini filed motions for summary judgment on all claims.  With regard to negligence, both respondents asserted that they were entitled to governmental immunity.  The circuit court informed the parties it would first hear Coolidge's negligence claims and determine whether the City and/or Tomasini were immune from suit.

¶6      In hearing Coolidge's negligence claims, the circuit court examined the undisputed facts, assumed the existence of negligence, and ultimately determined that both the City and Tomasini were entitled to governmental immunity.  With regard to the City, the court "reviewed hundreds of pages of documents showing the extensive detail and instruction that went into the planning and methodology of this project[,]" including:

> For example, the City worked with three lead engineers on the project.  The first did the underground work and created the underground specifications to be used; the second engineer reviewed the paving and roadwork conditions; and

the third engineer worked with the utility for the water work that was involved. All three of these engineers then had their work reviewed and approved by the City's lead engineer—engineers—excuse me, singular, engineer. This shows a deliberative, contemplative process involved in arriving at the decisions made concerning this public works project.

The court stated that the City's deliberative process "in determining the specifications and final construction documents demonstrate, without a doubt, that the City engaged in a quasi-legislative process which this Court will not second-guess."

¶7      Turning to Tomasini, the circuit court found that the City's well-considered specifications "became significantly more precise" through the process of requesting proposals, which culminated in Tomasini receiving the contract. The court concluded that Tomasini followed the City's reasonably precise specifications and was entitled to governmental contractor immunity. The court granted summary judgment to the City and to Tomasini and dismissed Coolidge's negligence claims.

¶8      At a subsequent hearing on Coolidge's remaining claims, the circuit court granted summary judgment in favor of the City. The court determined that the settlement agreement between the City and the prior owners of the Coolidge property barred Coolidge's intentional nuisance and inverse condemnation claims.[1]  The court went on to address both remaining claims on the merits and

---

[1] Coolidge originally raised as an alternative claim that it was entitled to indemnification under the settlement agreement. The circuit court dismissed this claim, and Coolidge does not raise it on appeal. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1., 306 N.W.2d 292 (Ct. App. 1981) (issues not briefed are deemed abandoned).

concluded that even without considering the settlement agreement, the City was entitled to summary judgment.

## DISCUSSION

*The circuit court properly granted summary judgment in favor of the City on Coolidge's negligence claim because the City was entitled to governmental immunity.*

¶9      Coolidge maintains that both the City and Tomasini were negligent, and that neither is entitled to governmental immunity for their negligent acts.  We review summary judgment decisions de novo, applying the same methodology as the circuit court.  *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.  Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2) (2017-18).[2]

¶10 WISCONSIN STAT. § 893.80(4) immunizes governmental subdivisions and their employees and agents from liability "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."  The statute "confers broad immunity from suit" and has been interpreted to include "any act that involves the exercise of discretion and judgment."  *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶¶20-21, 253 Wis. 2d 323, 646 N.W.2d 314. "The immunity defense assumes negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to

_____

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *Id.*, ¶17. The application of § 893.80(4) to a set of facts presents a question of law that we review independently. *Heuser ex rel. Jacobs v. Community Ins. Corp.*, 2009 WI App 151, ¶21, 321 Wis. 2d 729, 774 N.W.2d 653.

¶11 Taking as true the predicate facts for Coolidge's negligence claim, and assuming that those facts constitute negligence, we conclude that the City was entitled to governmental immunity, and therefore, to summary judgment. "Decisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶9, 277 Wis. 2d 635, 691 N.W.2d 658 (hereinafter, *MMSD*). In the instant case, a local ordinance required the City's Board of Public Works to "superintend all public works and keep the streets, alleys, sewers and public works and places in repair." *See* CITY OF WAUKESHA, WIS., CODE BOOK § 3.01 (Board of Public Works) (2002). To comply, the City prepared a comprehensive plan to rehabilitate the sewer and water lines at issue. There is no dispute that different aspects of the project were debated and reviewed by project engineers, the City Engineer, and the Director of Public Works, or that the City's employees made discretionary design choices and policy decisions. As such, the City's project resulted from the exercise of its legislative or quasi-legislative functions, and the City is immune from liability under WIS. STAT. § 893.80(4).

¶12 In arguing against the City's immunity, Coolidge does not suggest that the City's actions were ministerial rather than discretionary, or that one of the exceptions to governmental immunity applies. Instead, Coolidge asserts that the City is not entitled to immunity because "[t]here is not a shred of evidence" that its

failure to warn Tomasini about the building's condition and to require that Tomasini take protective measures "was the result of a legislative or quasi-legislative decision." According to Coolidge, the City made "no decision at all; no one thought about it." Coolidge argues that immunity does not apply to an action or inaction unless the municipality can show that it expressly raised and discussed that particular action or inaction, and then made a conscious choice between identified alternatives.

¶13 We are not persuaded. Coolidge cites no authority for the proposition that individual elements of, or omissions from, a public works project that was created, planned and implemented pursuant to a municipality's legislative or quasi-legislative functions can be isolated from the project as a whole and, in hindsight, picked apart to defeat immunity.[3] Such a notion runs afoul of well-settled case law concerning the government immunity extended to "the adoption, design, and implementation of a public works system." *MMSD*, 277 Wis. 2d 635, ¶9. *See also **Allstate Ins. Co. v. Metropolitan Sewerage Comm'n***, 80 Wis. 2d 10, 16, 258 N.W.2d 148 (1977) ("Where, when and how to build sewer systems are legislative determinations imposed upon a governmental body. It is not for the

---

[3] The cases cited by Coolidge on appeal are inapt. Coolidge's reliance on *Showers Appraisals, LLC v. Musson Bros.*, 2013 WI 79, ¶1, 350 Wis. 2d 509, 835 N.W.2d 226, is misplaced as to its claims against the City because the issues on appeal in *Showers* concerned under which circumstances a contractor was entitled to governmental immunity. Indeed, the circuit court in *Showers* granted the municipality's motion for summary judgment on grounds of immunity, and the plaintiff did not appeal that decision. *Id.*, ¶18. Nor is Coolidge's position supported by *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶¶3-4, 100, 350 Wis. 2d 554, 835 N.W.2d 160, which concerned a city's failure to abate a public nuisance.

court to be judge or jury to 'second guess' them in these determinations nor to find they are liable for negligence.") (footnote omitted).[4]

*The circuit court properly granted summary judgment in favor of Tomasini on Coolidge's negligence claims because Tomasini was entitled to governmental contractor immunity.*

¶14    Coolidge contends that Tomasini was negligent for (1) not performing a "site survey" (an inspection of the Coolidge property) before starting the project to determine whether Tomasini needed to adjust its construction technique due to the condition of the Coolidge property, (2) failing to use a seismograph to detect vibration levels while using its compaction equipment, and (3) using a vibratory compactor to compact the base course of the roadway.  As to the first two complaints, both of which involve omissions by Tomasini, it is undisputed that the contract did not require Tomasini to inspect the Coolidge property or monitor vibration levels.  The third complaint involves an affirmative action taken by Tomasini that was accounted for in the specifications.

¶15    Courts have extended governmental immunity to private contractors acting as agents of a government entity.  *See, e.g.*, ***Melchert v. Pro Elec. Contractors***, 2017 WI 30, ¶19, 374 Wis. 2d 439, 892 N.W.2d 710; ***Estate of Lyons v. CNA Ins. Cos.***, 207 Wis. 2d 446, 457, 558 N.W.2d 658 (Ct. App. 1996).  In ***Lyons***, we explicitly extended WIS. STAT. § 893.80(4) immunity to government contractors, concluding that a contractor should not bear liability when "simply

---

[4] We also observe that Coolidge's factual assertion that the City did not give a thought to the condition of its property mischaracterizes the record.  There is no dispute that the City's specifications do advise that the project is taking place near a landfill.  The circuit court properly found as undisputed that the City did consider private property near the site when making decisions about the specifications and other bid documents.

acting as an 'agent' of governmental authorities who had retained ultimate responsibility" for a project. *Lyons*, 207 Wis. 2d at 454. To assert immunity, a government contractor must prove that: (1) the governmental entity approved reasonably precise specifications that were being followed at the time the alleged injury occurred and (2) the conduct for which immunity is sought implemented the governmental entity's decisions, made during the exercise of its legislative, quasi-legislative, judicial, or quasi-judicial functions. *Melchert*, 374 Wis. 2d 437, ¶¶19-20.

¶16 Applying the test, we conclude that Tomasini was entitled to immunity. First, the City promulgated "reasonably precise specifications" governing Tomasini's work, which Tomasini was following when its compacting activities allegedly damaged Coolidge's building. *Id.*, ¶19. Through the 116 different Special Provisions for the project, an incorporated set of Department of Transportation (DOT) specifications, and a set of its own Standard Construction Specifications, the City directed every aspect of Tomasini's work, including how to compact granular material in the roadway. Having strictly followed those specifications, Tomasini cannot be held liable for any damages resulting from the execution of the City's plan.

¶17 As to the claims that Tomasini failed to perform extra-contractual property inspection and vibrations monitoring, Coolidge argues that because the City's specifications did not *prohibit* Tomasini from performing these tasks, Tomasini was not acting according to "reasonably precise specifications." This argument is a nonstarter. "A contract is reasonably precise if it reasonably and precisely lists items required; common sense dictates that items not required by the contract do not obligate the contractor to provide them." *Estate of Brown v. Mathy Constr. Co.*, 2008 WI App 114, ¶13, 313 Wis. 2d 497, 756 N.W.2d 417.

Tasks not included in the City's specifications pertain to its project design and Tomasini cannot be held to account for their absence.[5]

¶18 With regard to the third negligence claim (use of the vibratory rollers), Coolidge contends that the specifications were not reasonably precise for purposes of immunity because they allowed Tomasini to choose which equipment to use in compacting the gravel base. We are not persuaded.

¶19 Coolidge understates the City's extensive control over the equipment Tomasini could use to compact the road base. The City's specifications incorporated DOT specifications requiring the use of "specialized pneumatic or vibratory compaction equipment." This limited Tomasini to two types of compaction equipment and prevented Tomasini from using static (nonvibratory) drum rollers, sheepsfoot rollers, tamping rollers, grid rollers, or other equipment. "[S]pecifications need not spell out every minute detail of a project to qualify as 'reasonably precise.'" *Bronfeld v. Pember Cos.*, 2010 WI App 150, ¶25, 330 Wis. 2d 123, 792 N.W.2d 222. The specifications pertaining to compacting equipment did not delegate to Tomasini sole responsibility "for the means, methods, techniques, sequences, and procedures of construction." *See Showers*

---

[5] Coolidge's argument is further undercut by the existence of provisions contemplating site inspections and vibratory compaction. Before bidding, the City required Tomasini to "examine the worksite." This required Tomasini to inspect only the roadway and just beyond the sidewalk, not private buildings such as Coolidge's apartments. After bidding, the specifications required Tomasini to inspect water utilities and to inspect and document the condition of underground sewer laterals. These specifications provided reasonable precision to Tomasini's inspection obligations and conspicuously omitted any requirement to inspect buildings on private property. Similarly, specifications detailed the means by which Tomasini was to compact the base course: use a vibratory roller to compact the 1.25-inch crushed stone "until there is no appreciable displacement, either laterally or longitudinally." In other words, the contract contained "reasonably precise" specifications on how Tomasini should use vibration to compact the base course, but omitted any additional requirement that Tomasini monitor those vibrations.

*Appraisals, LLC v. Musson Bros.*, 2013 WI 79, ¶¶37, 48-49, 51, 350 Wis. 2d 509, 835 N.W.2d 226.  We agree with the circuit court that by narrowing Tomasini's choices to only two types of rollers with which to densify the foundation, the specifications were reasonably precise so as to warrant immunity.

¶20    In fact, the City's specifications went further in controlling Tomasini's use of equipment to compact the top layer of gravel in the roadway. The project expressly incorporated the City's Standard Construction Specifications, which addressed asphalt road construction and required the use of a large vibratory roller before paving the roadway:

> Prior to the placing of the Prime Coat[,] the crushed aggregate shall be rolled with a vibratory roller having a minimum effective weight of four (4) tons.

This specification applies to the work Tomasini was performing when Coolidge claims its apartment building settled.  As such, the circuit court found that the specifications required Tomasini "to use the vibratory roller on the final phase of compacting."  Thus, even if we were to accept Coolidge's argument that reasonable precision required the City to mandate the exact piece of equipment alleged to have caused damage (here, the vibratory roller), that standard is satisfied.

¶21    Finally, we conclude that the second prong of the governmental contractor immunity test is satisfied.  The undisputed facts show that the City made legislative or quasi-legislative decisions to (1) require Tomasini to use a vibratory roller to compact the roadway, (2) not require Tomasini to inspect any private buildings adjacent to the Project, and (3) not require Tomasini to monitor any vibration levels from its equipment.  There is no dispute that Tomasini followed those design decisions.  Therefore, Tomasini is immune from any

11

liability resulting from its implementation of the City's legislative or quasi-legislative project design.

¶22    Coolidge maintains that Tomasini's failure to inspect the Coolidge property and to monitor compaction vibrations were not omitted pursuant to the City's legislative function because the City did not expressly debate and decide against including the inspection and monitoring requirements in its specifications. We are not persuaded.  "If contractor immunity required a contract to list not only all the work and materials required but all work and materials not required, state contracts would approach encyclopedic proportions."  *Brown*, 313 Wis. 2d 497, ¶13.  Government contractor immunity does not hinge on the existence of such a cumbersome and inefficient process.

¶23    Moreover, Coolidge is wrong to suggest that the City did not consider the particular work that Coolidge claims Tomasini should have done on the project.  The record before the circuit court shows that the City considered the landfill's potential impact on the project, but was not concerned about its impact on private buildings because none of the street work "impact[ed] the landfill proper."  Similarly, the City did not include any specifications about protecting nearby homes or buildings because the City was "not anticipating any damage."  The City did not discuss minimizing vibrations because "it's typically not an issue on projects."  While Coolidge may disagree with the City's conclusions, the fact remains that the City considered the landfill while drafting the specifications but did not think the street work would cause any problems.

*The Circuit Court properly granted summary judgment in favor of the City on Coolidge's intentional nuisance claim.*

¶24    Coolidge alleges that the City is liable for creating an intentional private nuisance, that is, a nontrespassory invasion of Coolidge's interest in the private use and enjoyment of its land.  *See **Vogel v. Grant-Lafayette Elec. Coop**.*, 201 Wis. 2d 416, 423, 548 N.W.2d 829 (1996).  As with its other causes of action, the factual predicate for Coolidge's intentional nuisance claim is that vibrations from the City's construction caused its building to settle and rendered it uninhabitable.  Coolidge asserts that the City is liable because it knew about the condition of Coolidge's building and that the project involved the use of vibrations.

¶25    A nuisance is intentional if the defendant either acts for the purpose of causing it, or "nonetheless has knowledge that [its] otherwise legal enterprise is causing harm or is substantially certain to cause the invasion at issue."  *MMSD*, 277 Wis. 2d 635, ¶37.  The *MMSD* court continued, "when a nuisance is alleged to fall under the second category of intentional conduct, the 'knowledge' refers to knowledge that the condition or activity is causing harm to another's interest in the use and enjoyment of the land."  *Id.*, ¶38 (citing *Vogel*, 201 Wis. 2d at 430-31).  The court in *MMSD* relied on *Vogel* to summarize the law, stating that in *Vogel*, "a case involving stray voltage alleged to have damaged a farmer's cows, this court stated that it was not sufficient that the defendant knew that some stray voltage invaded the farmer's land; rather, proof was required that the defendant knew that unreasonable levels of the stray voltage were causing harm to the plaintiff's cows."  *MMSD*, 277 Wis. 2d 635, ¶38 (citing *Vogel*, 201 Wis. 2d at 432-433).

¶26  In the instant case, citing the above law, the circuit court concluded that Coolidge failed to set forth an intentional nuisance claim:[6]

> That means that even assuming causation, as I've indicated I would for purposes of this motion, that the plaintiffs here must be able to make a *prima facie* showing that the City knew the vibrations were causing dynamic settling of the soil. The undisputed evidence before the court on summary judgment motion is that no one reported any vibration problems to the City, that the City's engineer received no complaints about vibration problems. And the undisputed evidence before the court is that the City did not otherwise have knowledge that the vibrations caused by the project were unreasonable, that the vibrations invaded the property, and that the vibrations caused harm, meaning the dynamic settling.
>
> And so for those reasons then, I'll find that … the plaintiff has not made a *prima facie* case as it relates to the nuisance claim and find alternatively for the City on summary judgment on that claim as well. And I'll just add to that that the City had no knowledge, frankly actual, imputed or otherwise, of the harm caused by the settling. And that's really where *Vogel* comes in, because, again, it's not sufficient that they know of the condition of the property.

¶27  Like the circuit court, we conclude that summary judgment was appropriate. Pursuant to *MMSD*, to demonstrate its intentional nuisance claim, Coolidge would have to prove that the City knew that there were vibrations invading Coolidge's property, and that the level of those vibrations was causing harm to the use and enjoyment of the property. The undisputed facts are that the City did not know that vibrations were causing Coolidge's soil to settle such that it interfered with the use and enjoyment of the property.

---

[6] The circuit court first concluded that the settlement agreement barred Coolidge's recovery on both the intentional nuisance and inverse condemnation claims. Because we conclude that the City was entitled to summary judgment on the merits of these claims, we decline to consider whether the settlement agreement also required dismissal of Coolidge's claims. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

¶28 Coolidge also asserts that "Tomasini was an agent of the City, therefore [the City] had actual knowledge that harm was substantially likely to occur." Coolidge introduces no evidence that Tomasini had actual knowledge that the Coolidge property was being harmed by excessive vibrations. To the extent Coolidge cites to the deposition testimony of an expert retained after the lawsuit was filed, that expert did not provide any evidence that Tomasini had actual knowledge that vibrations were causing harm contemporaneous with the project. At best, Coolidge appears to be suggesting that this intentional nuisance claim can be sustained based on knowledge imputed to the City from Tomasini's knowledge acquired after the fact. We are not persuaded. The intentional nuisance claim in this case necessarily requires contemporaneous knowledge of both the conduct causing the nuisance as well as knowledge that the nuisance-causing conduct was actually causing damage to the property.

*The Circuit Court properly granted summary judgment in favor of the City on Coolidge's claim that its property was taken for public use without just compensation.*

¶29 "The property of no person shall be taken for public use without just compensation therefor." WIS. CONST. art. I, § 13. "Governmental action that merely causes damage to private property is not the basis for" a just compensation claim. *Zinn v. State*, 112 Wis. 2d 417, 424, 334 N.W.2d 67 (1983). Rather, there must be a "taking" of private property for public use. *Id.* A taking can occur through two types of governmental conduct: (1) an actual physical occupation or appropriation or (2) a regulatory restriction on the property that deprives the owner of all, of substantially all, of the beneficial use of the property. *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶22, 326 Wis. 2d 82, 785 N.W.2d 409.

15

¶30    Coolidge has failed to set forth a claim for compensable taking. None of the construction work was performed on private property, and the City did not appropriate any of Coolidge's property for its public works project. "[G]overnment action outside the owner's property that causes consequential damages within does not constitute a taking." *Id.*, ¶30 (citation omitted). The claim in Coolidge's brief that a compensable taking occurs "[i]f a governmental entity causes damage to property which renders the property valueless" finds no support in the cases it cites and is plainly contradicted by *Zinn* and *E-L Enterprises*. Absent a physical occupation or appropriation of property, Coolidge's claim is simply a reformulation of its negligence claim, for which the City enjoys immunity. *See E-L Enterprises*, 326 Wis. 2d 82, ¶¶5, 32-33.

¶31    Coolidge also asserts that the City's project effected a regulatory taking of its private property.[7] We are not persuaded. Coolidge could have made repairs after it identified the problems with its sanitary system. To the extent Coolidge suggests that a DNR regulation is interfering with needed repairs, there is a process by which Coolidge can make repairs in compliance with the DNR regulation. Coolidge submits no evidence that it has initiated any such process with the DNR or sought a building permit from the City.

---

[7] Coolidge's complaint alleged a claim for inverse condemnation under WIS. STAT. § 32.10. At some point, the claim morphed into one alleging a regulatory taking under the constitution, which is a different cause of action. *See Zinn v. State*, 112 Wis. 2d 417, 433, 334 N.W.2d 67 (1983) (The inverse condemnation statute "is designed solely to deal with the traditional exercise of eminent domain by the government: the government has occupied private property, plans to continue such occupation and the landowner is merely requesting just payment for this land."). Coolidge has not set forth a claim under § 32.10, and we will address its cause of action as a regulatory taking without just compensation in violation of the constitution.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.